Plaintiff, Heritage Square Associates, has brought a legal CT Page 5641 malpractice action against the defendants, attorney Leonard Blum and the firm of Gladstone, Schwartz Blum, in which he is a partner.
The gist of the complaint against these defendants is that attorney Leonard Blum and his law firm, having advised the plaintiff that it had a viable malpractice claim against the plaintiff's former lawyer, negligently failed to warn the plaintiff that such legal malpractice action had to have been brought, under Connecticut law, within three years of the alleged acts of malpractice. Plaintiff claims that this negligence in advice to the plaintiff resulted in the plaintiff's loss, due to the passage of time beyond the limitations period, of a valid and substantial malpractice claim against its former counsel.
The defendants have moved to strike the complaint because it fails to state a valid cause of action in that it is premature, since there is available to the plaintiff an alternative remedy — a cause of action in the nature of a breach of contract for breach of an implicit agreement by plaintiff's former counsel to represent the plaintiff in accordance with the standards of ordinary care. The statute of limitations period for breach of contract is six years and there is ample time for the plaintiff to pursue that claim. Moreover, the plaintiff has not alleged that the bar of a legal malpractice action in negligence has in any way prejudiced it as to any recovery or remedy it may have against the former attorney on other theories of recovery.
I.
The plaintiff partnership claims that, in 1987, it had purchased commercial property, known as Heritage Square, consisting of two and one-half acres of commercially-zoned land containing seven buildings with a combined space of approximately 90,000 square feet, which property was located in Fairfield between the Boston Post Road and the Fairfield train station. The plaintiff planned to create commercial condominiums, so the availability of parking was of paramount importance. The property was located in downtown Fairfield where parking was extremely limited. The plaintiff claims that its former attorney had been engaged by it to provide legal advice while the plaintiff was determining whether to purchase the property and then legal representation in negotiating for and closing on the property.
The plaintiff claims that it assumed it was acquiring long term use of critical parking as a result of a lease from the State of CT Page 5642 Connecticut to the Town of Fairfield for approximately thirty parking spaces near the railroad station and a subsequent sublease of these spaces from the Town to the previous owners of Heritage Square, from whom it purchased the property.
The plaintiff claims that its previous attorney failed to ascertain and failed to advise that it would not have a clear legal right to use these spaces because of a lack of required prior state approval for any sublease of the spaces; because the state could terminate the lease unilaterally if it determined that any portion was needed for "transportation purposes;" and because the principal lease was for only a twenty-year-term and could be renewed by the town only for an additional twenty years.
After being advised of these problems when Attorney Blum began representation, the plaintiff then tried to cure the parking problem. It was ascertained that the State would not approve any sublease and intended to abrogate the lease with the Town. Therefore, the partnership was forced to attempt sale of the condominiums and another parcel without being able to provide adequate parking.
As a result, the plaintiff claims it suffered economic loss because it could not guarantee viable parking to prospective purchasers. It too lost prospective sales. It was forced to sell condominiums at reduced prices. Sales were delayed while it attempted to cure the parking situation and it was forced to agree to significant penalties if it proved unable to "cure" the parking problem.
Ultimately, the inability to sell its condominiums at appropriate prices, which the plaintiff traces back to the parking problem, made the plaintiff unable to meet its mortgage payments. This, the plaintiff claims, resulted in foreclosure by its lenders of the Heritage Square property and on the homes of its member partners.
II.
The defendants assert that the plaintiff has a viable cause of action not barred by the statute of limitations and therefore this action is premature. In order to prevail in a tort action, a plaintiff must not only allege a breach of a legal duty, but also damages resulting from that breach. Wright, Connecticut Law of Torts, Section 2 (1968). A cause of action at law, as opposed to a cause in equity, must be complete before it can be put in suit. Huntting v. Hartford St. Ry. Co., 73 Conn. 179, 46 A. 824, 825 (1900). Such an action cannot be sustained where the injury is only anticipated as a result of a future act. Id.
An attorney's alleged negligence may result in the loss to his client of only one of several legal theories, remedies, defenses or culpable parties. Such an error by his attorney may not affect the CT Page 5643 ability of that client to prosecute or defend the very claim or affect the result. As such, the attorney will not be liable for the error since the client has suffered no present loss. In fact, the client's failure to pursue an action on other available theories may provide the attorney with a complete or partial defense for the client's failure to mitigate the apparent loss. Mallen and Smith, Legal Malpractice, 3d Ed., Section 17.6, P. 16 (1989).
The defendants cite Parker-Smith v. Prince Mfg. Co., 172 App.Div. 302,158 N.Y.S. 346 (1916), as a case where the court recognized this legal theory of defense and held that legal remedies left to the client must be viable and equivalent. In Evans v. Detweiler, 466 So.2d 800 (La.App. 1985) the court reached a similar result in a client's claim arising from unproductive oil and gas investment. The court found that the attorney may have negligently caused the client to lose a federal remedy, however, the court held that the existence of an alternative state remedy precluded a present claim for legal malpractice.
The defendants acknowledge that the most common legal malpractice action is for negligence, but nonetheless, courts have recognized malpractice causes of action based upon breach of contract, breach of warranty, breach of client's instructions, fraud, etc. See Mallen and Smith, Legal Malpractice, 3d Ed., Sections 8.3 — 8.11, pp. 425-428 (1989).
It is usually recognized that the appropriate statute of limitations to be applied is based upon the theory of the wrong or the nature of the injury. Mallen and Smith, supra, Chapter 18. The prevailing view is that the client who has several remedies may pursue those which are not barred by the statute of limitations.
The defendants' position is that Connecticut stands with a minority of courts in liberally finding the suitability of an express contract cause of action against an attorney. See Nowakowski v. Rozbicki, 39 Conn. Sup. 458, 466 A.2d 353 (1983); Robbins v. McGuinness, 178 Conn. 258, 423 A.2d 897 (1979).
In addition, the defendants note that where the breach of contract claim involves the breach of a specific promise, a plaintiff may not need proof of a breach of a standard of care or expert testimony in order to prevail. Therefore, the chances of success may be greater and the expense and time of litigation may be significantly lower. Mallen and Smith, Legal Malpractice, 3d Ed. supra, at Section 8.4, p. 415.
Connecticut has in fact recognized a six-year statute of limitations for breach of contract in a legal malpractice setting. See Nowakowski v. Rozbicki, supra; Robbins v. McGuinness, supra; C.G.S., Section 52-576. CT Page 5644
Under such circumstances, the defendants claim that because the plaintiff may proceed with a cause of action which may in fact be easier to prove based on a breach of contract theory, this legal malpractice action against these defendants is premature. There is an available alternative remedy to the plaintiff which will permit it to seek the damages claimed and therefore plaintiff's action against these defendants must fail.
III.
The plaintiff is concerned with whether Connecticut will permit an "end run" around the three-year tort statute of limitations for legal malpractice claims by allowing dissatisfied clients to rephrase their complaints as contract claims for breach of an implicit contractual agreement on the part of their counsel to exercise ordinary care, skill and knowledge.
The plaintiff asserts that the law in Connecticut is unsettled as to whether a contract statute of limitations may be used to extend the life of a claim of attorney malpractice beyond the three-year-period set forth in the Connecticut tort statute of limitations. The plaintiff concedes that, as defendants point out in citing the legal malpractice treatise by Mallen and Smith, courts in certain jurisdictions have permitted plaintiffs to assert contract claims against attorneys for failure to exercise ordinary care.
The plaintiffs note that usually such courts are faced with tort statutes of limitations that speak of claims for injury to body or property and, finding such language incompatible with a claim for monetary loss resulting from attorney malpractice, have felt compelled to apply contract statute of limitations that do not contain such limiting language regarding the type of compensable injuries. See Mallen and Smith, Legal Malpractice, Secs. 18.6, 18.7 (3d Ed. 1989). The plaintiff notes that no such limiting language is found in Connecticut's tort statute of limitations, Gen. Stat. Sec. 52-577. There is no such need arising to try to force plaintiff's claim into a breach of contract theory when, in reality, it is nothing more than a standard negligence action for professional malpractice.
The plaintiff agrees that the Supreme Court of Connecticut has recognized contract actions against attorneys, but notes that it has not ruled on the propriety of applying the contract statute of limitations to actions that may be indistinguishable from negligence claims for professional malpractice that have traditionally sounded in tort.
In Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981), for example, the court held that an intended beneficiary of a will who CT Page 5645 is deprived of an inheritance because of alleged attorney error can sue the attorney who prepared the will under contract theory as a third-party beneficiary of the agreement between the attorney and his client to prepare the will. The court stated that a plaintiff may choose to proceed in contract or in tort "[u]nless a particular conflict between the rules of contract and tort requires otherwise." The plaintiff notes that the Court did not have to address the question of whether such a conflict between the rules is presented by the difference between a three-year statute of limitations for tort actions and a six-year statute of limitations for contract actions.
Similarly, the Supreme Court implicitly recognized a contract claim against an attorney in Robbins v. McGuinness, 178 Conn. 258,423 A.2d 897 (1979), but did not address the question of whether the contract statute of limitations applied to claims of negligence. The contract breach alleged in Robbins was a claimed failure to represent a client's interest at all because of an alleged conflict of interest. A separate claim of negligence was also pleaded and the Court and parties treated this latter as a claim sounding in tort, not contract. The court held that the contract claim was barred by the six-year limitation in C.G.S. Section 52-576
and the negligence claim was barred by the three-year limitation in C.G.S. Sec. 52-577 and that neither statute was tolled, under the facts alleged, by a course of continuing conduct or a continuing duty to warn.
The Appellate Court of Connecticut appears to the plaintiff to have ruled both ways on this issue. In Shuster v. Buckley, 5 Conn. App. 473,500 A.2d 240 (1985), the Appellate Court upheld the dismissal of a legal malpractice action because the action was brought after the three-year tort statute of limitations had passed. The court refused to read the plaintiff's pleadings as sounding in contract despite allegations in the complaint concerning the existence of an employment relationship between the attorney and client:
 "where the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence, the complaint sounds in negligence, even though he also alleges he retained him or engaged his services. The plaintiff's revised complaint is couched in the language of tort rather than contract and we find no merit in his claims to the contrary." (Citations omitted.)
Shuster, supra at 476. Moreover, the Shuster case also upheld the refusal of the trial court to permit the plaintiff to amend his complaint to state explicitly a cause of action based on contract.
In a later case, however, the Appellate Court ruled that the longer contract statute of limitations would apply to an action against an attorney so long as the complainant took heed to assure CT Page 5646 that his complaint is "couched in the language of contract." Mac's Car City v. DeNigris, 18 Conn. App. 525, 559 A.2d 712
(1989). The Appellate Court distinguished the decision in Shuster by explaining that the complaint in Shuster was "couched in the language of tort rather than contract." No mention is made of the refusal in Shuster to permit the complainant to amend his complaint to state his claim in the approved language of contract.
The plaintiff is concerned that in Connecticut a claim that is, in essence, simply a claim for negligent representation will not be permitted to be formulated in the language of contract in order to avoid the three-year statute of limitations. In any event, the plaintiff requested a clear ruling of this court, if the motion were to be sustained, that it may proceed against the plaintiff's original counsel because, as a matter of law, there is an implicit promise in every attorney-client contract that the attorney will perform his services non-negligently and a breach of that promise constitutes a valid contract claim governed by Connecticut's six-year statute of limitations.
IV.
In the recent case of Westport Bank and Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, ___ A.2d ___ (1992), the plaintiff bank had committed to supplying a construction loan to M., subject to M.'s granting a second mortgage to the plaintiff on two adjoining parcels of land that he owned. M. retained the defendants to provide legal services in connection with the loan, including searching the title of the adjoining lots, preparing loan, closing documents and issuing to the plaintiff a title opinion and securing a title insurance policy for the plaintiff. The plaintiff bank sent an order for title search directly to the defendants, requesting them to search the title and to issue a title opinion letter to the plaintiff. The defendants then conducted a title search, prepared loan closing documents, conducted the loan closing and issued a title opinion letter directly to the plaintiff, representing that the lots were unencumbered except for a preexisting first mortgage and that the plaintiff's mortgage would be a valid second mortgage on the property. The complaint alleged that there was actually a second mortgage on the property in favor of United Bank and Trust Company. The plaintiff alleged that it was damaged when the first mortgage was foreclosed and there was insufficient money realized in the foreclosure sale to reduce M.'s debt to the plaintiff.
The alleged failure of the attorneys to discover a problem with the title is similar to the claims concerning the present plaintiff's original attorney. Although the Westport Bank case primarily resolved that the complaint should not have been stricken by the trial court on the basis found by the trial court that the complaint CT Page 5647 failed to state a recognizable cause of action because the imposition of liability to the plaintiff bank against the defendants would create potential for conflict of interest and be against public policy, it appears to this court to be instructive as to the dilemma posed by this plaintiff.
The Supreme Court accepted that such attorney error could give rise to both a tort malpractice claim and a breach of contract claim. The Court clearly indicated that it understood "the first count of the amended complaint alleged that `[a]s a result of the foregoing breach of Attorney Mallen's and CMA's contractual duties to [the] Plaintiff, directly . . . the Plaintiff has sustained monetary damages,' and the third count of the amended complaint alleged that `[t]he defendants breached their duty of care to the plaintiff by their negligent and careless' conduct regarding the UBTC mortgage. These allegations . . . clearly alleged, in count one, a breach of direct attorney-client contract and in count three, the tort of legal malpractice by an attorney with respect to his client." Westport Bank and Trust Co. v. Corcoran, Mallin Aresco, supra, at 494, fn. 5.
The inference in that case and the other cases cited above, is the necessary conclusion that there is an implicit promise in an attorney-client contract that the attorney will perform his services in ascertaining and advising on the state of title in a competent and professional manner and a breach of that promise supports a valid breach of contract claim, even though the negligent performance of professional service may also give rise to a tort action. A breach of that promise constitutes a contract claim governed by Connecticut's six-year statute of limitations.
This court therefore agrees with the defendants that this present action is premature and fails to state a cause of action because the plaintiff has a remaining alternative and viable remedy against its former attorney regardless of the defendants' alleged negligence and the plaintiff has not pleaded that it is barred from such relief by the defendants' negligence.
The motion to strike is granted.