S.M.S. TEXTILE MILLS, INC. *v.* BROWN, JACOBSON, TILLINGHAST, LAHAN AND KING, P.C., ET AL. (11655)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued May 5—decision released September 7, 1993

*Peter A. Kelly,* for the appellant (plaintiff).

*Karen P. Blado,* with whom, on the brief, were *Amy S. McCabe* and *Christopher L. Brigham,* for the appellee (named defendant).

*Albert Zakarian,* with whom, on the brief, was *Margaret J. Strange,* for the appellee (defendant Reid and Riege, P.C.).

LAVERY, J. The plaintiff appeals from the judgment of the trial court granting the defendants' motions for summary judgment in this legal malpractice action. The plaintiff claims that the trial court improperly (1) granted the defendants' motions for summary judgment because it failed to recognize the existence of disputed issues of material fact regarding the existence and length of the attorney-client relationship between the plaintiff and each defendant, (2) sustained the objection by the defendant Reid and Riege, P.C., to the plaintiff's request for leave to amend the complaint, and (3) granted the motion filed by the defendant Brown, Jacobson, Tillinghast, Lahan and King, P.C. (Brown and Jacobson), to strike the plaintiff's claims under the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The following facts were presented to the trial court by way of the pleadings and documents accompanying the motion for summary judgment. Prior to October, 1986, Lawrence Zabel was the sole owner of the stock

of the plaintiff textile company located in Norwich. As Zabel neared retirement, he considered selling the textile company, but he did not want to sell it to an outside group. There were four long-term employees upon whom Zabel had relied over the years for whom he wanted to provide when he sold the company. Initially, Zabel considered selling the company to all four employees. One of the employees, Francis A. Flynn II, was reluctant, however, to form a partnership with the other three. Zabel suggested a plan whereby he would sell the company to Flynn and his son, and the other three employees would, as a condition of the sale, be provided with specified percentage shares in the business through an employee stock ownership plan. Flynn and his son rejected this plan as well.

Zabel's attorney at the law firm of Brown and Jacobson then suggested performance share agreements to benefit the three nonbuyer employees. Under the performance share agreements, the Flynns would own all of the voting stock while the other three employees would still share in the profits of the company. The performance share agreements provided a percentage cap, but did not provide for an alternative specific dollar cap.

Brown and Jacobson's role in the transaction was to prepare the documents that structured the transaction. Reid and Riege's role in the transaction was to represent the Flynns by ensuring that the documents drafted by Brown and Jacobson were consistent with the deal negotiated between the Flynns and Zabel, and by affirming that the contracts accurately reflected the understanding the parties had reached.

The performance share agreements were ultimately executed in October and December of 1986. After the execution of the sale and performance share agreements, the company prospered well beyond the own-

ers' expectations. As a result, the minimum dollar amounts stated in the agreements did not apply, and the maximum limit of 7 percent owed to one of the nonowner employees reached a figure in excess of the $25,000 alternative expressed in the agreement. The plaintiff refused to pay the sums due under the performance share agreements to the nonowner employees. The plaintiff brought this action against both defendants in July, 1990.

In March, 1992, both defendants filed summary judgment motions claiming that the plaintiff failed to bring its action within the three year period established by the applicable statute of limitations. The trial court granted the motions, and this appeal followed.

The plaintiff's first claim is that the trial court improperly granted the defendants' motions for summary judgment. Specifically, the plaintiff argues that the trial court should have recognized the "continuous representation rule" and found that the plaintiff's cause of action was not time barred by Connecticut's three year statute of limitations for tort actions, General Statutes § 52-577.[1]

"Summary judgment must be rendered if 'the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384; *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 296–97, 600 A.2d 1040 (1991). '[T]he party opposing the motion [for summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The mere presence of an alleged

---

[1] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

adverse claim is not sufficient to defeat a motion for summary judgment. . . . Rather, the [nonmoving party] must recite specific facts . . . which contradict those stated in the [moving party's] affidavits and documents. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . .' (Internal quotation marks omitted.) *Farmington* v. *Dowling,* 26 Conn. App. 545, 549, 602 A.2d 1047, cert. granted on other grounds, 221 Conn. 921, 608 A.2d 687 (1992)." *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 566–67, 611 A.2d 452 (1992).

In this case, each defendant moved separately for summary judgment. The trial court ruled on Reid and Riege's motion on August 6, 1992, and on Brown and Jacobson's motion on August 19, 1992. The trial court did not issue a memorandum of decision on the motions, but did comment in its order on the motion of Reid and Riege: "This action is barred by the statute of limitation § 52-577 . . . ." Section 52-577 applies to any action in tort. The three year statute of limitations for tort claims applies in cases in which the plaintiff alleges legal malpractice. *Shuster* v. *Buckley,* 5 Conn. App. 473, 477, 500 A.2d 240 (1985); *Nickerson* v. *Martin,* 34 Conn. Sup. 22, 374 A.2d 258 (1976).

Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. Our Supreme Court stated in *Fichera* v. *Mine Hill Corporation,* 207 Conn. 204, 212, 541 A.2d 472 (1988): "In construing our general tort statute of limitations, General Statutes § 52-577, which allows for an action to be brought within three years 'from the date of the act or omission complained of,' we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until

the cause of action has accrued or the injury has occurred. *Prokolkin* v. *General Motors Corporation,* [170 Conn. 289, 294–97, 365 A.2d 1180 (1976)]."

In response to the defendants' motions for summary judgment, the plaintiff submitted a brief outlining a continuous representation theory under which its legal malpractice action would not be barred by § 52-577. On appeal, the plaintiff urges us to adopt the continuous representation theory.

The plaintiff concedes, correctly, that the continuous representation theory that it urges us to adopt has never been discussed in an opinion by this court or our Supreme Court. In other jurisdictions, the "continuous representation rule" has been defined as follows: it "tolls the statute of limitations or defers accrual of the cause of action while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts." *Wall* v. *Lewis,* 393 N.W.2d 758, 762 (N.D. 1986).

It is undisputed that the defendant Brown and Jacobson did not represent the plaintiff in the performance share agreements transaction, but represented the prior sole shareholder, Zabel, and, in fact, told the plaintiff to get another attorney. It is also undisputed that Reid and Riege represented the plaintiff only for the plaintiff's purchase of the stock and all ancillary agreements, including the performance share agreements, and ceased to represent the plaintiff within two or three months of October, 1986.[2]

---

[2] The following exchange occurred during the deposition of Francis A. Flynn, which is part of the record, by Albert Zakarian, attorney for Reid and Riege:

"[Mr. Zakarian]: And after this transaction was over in October of 1986, did you continue to work with Reid and Riege on anything?

In this case, the plaintiff claims that the trial court improperly refused to recognize the continuous representation rule when it granted the defendants' motions for summary judgment. The plaintiff claims that at the time the defendants moved for summary judgment, a material issue of fact remained in dispute. That material issue, according to the plaintiff, was the existence and duration of the attorney-client relationship between it and the defendant law firms. The plaintiff then argues that the trial court improperly refused to apply the continuing representation rule, because, had the issues of the existence and duration of the attorney-client relationship been argued and decided in favor of the plaintiff, the plaintiff's action would not be time barred by the statute of limitations. We hold that the trial court properly determined that no material issues remained in dispute, and properly granted summary judgment. The record clearly indicates that the defendants' latest actions complained of by the plaintiff took place in late 1986. As we have stated, our statute of limitations is an occurrence statute. The last acts complained of took place in the fall of 1986, while the complaint in this action was filed in July, 1990. More than three years had passed since the occurrence of the acts complained of; therefore, the trial court correctly concluded that the action was time barred.

---

"[Mr. Flynn]: There was some cleanup items that had to be taken care of but then that was the end of it. Because actually we had Brown and Jacobson.

"Q. For example, is it true that you ceased using Reid and Riege really shortly after this transaction, within two or three months later?

"A. Yes.

"Q. And was that because you were unhappy with Reid and Riege's services or you just had your regular firm and your lawyer you worked with for years, [Brown and Jacobson] would take care of your business?

"A. I think that's a true statement. We were comfortable with [Brown and Jacobson]. They were a block away, you could walk to their office. It was close and one of convenience."

The plaintiff asserts that the foundations for the adoption of the continuous representation rule were laid in our Supreme Court's opinion in *Fichera* v. *Mine Hill Corporation,* supra. The *Fichera* court wrote: "Where we have upheld a finding that a duty continued to exist after the cessation of the 'act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. See *Giglio* v. *Connecticut Light & Power Co.,* [180 Conn. 230, 242, 429 A.2d 486 (1980)] ('repeated instructions and advice given to the plaintiff by the defendant' concerning a furnace it had previously converted and left in a defective condition); *Giambozi* v. *Peters,* 127 Conn. 380, 385, 16 A.2d 833 (1940) ('[w]hen . . . injurious consequences arise from a course of treatment [by a physician], the statute does not begin to run until the treatment is terminated'); cf. *Handler* v. *Remington Arms Co.,* [144 Conn. 316, 321, 130 A.2d 793 (1957)] (duty to warn of danger of defective cartridge, 'an inherently dangerous article,' held to continue in existence until time of injury)." Id., 210. The plaintiff has not demonstrated, either here or in the trial court, that, through a continuing course of conduct, either defendant breached a duty owed the plaintiff after the commission of or in relation to the alleged torts.

The plaintiff next claims that the trial court improperly sustained Reid and Riege's objection to the plaintiff's request for leave to amend the complaint. We disagree.

On May 4, 1992, the plaintiff moved to amend its complaint. The proposed amendment alleged that "[d]uring the period from approximately June, 1986 through at least November, 1988, defendant Reid and Riege provided legal services to the plaintiff in connection with the plaintiff's acquisition of the stock of Nor-

wich Textiles, Inc. and 801 Greenleaf, Inc." The trial court denied the plaintiff's motion to amend at the same time it granted Reid and Riege's motion for summary judgment on August 6, 1992. On August 19, 1992, the plaintiff moved for articulation, requesting that the court clarify the legal basis for granting the defendants' motions for summary judgment and for sustaining Reid and Riege's objection to the plaintiff's motion for leave to amend the complaint. The trial court denied the motion for articulation as to the summary judgment ruling, but granted it as to the request to amend the complaint ruling. The trial court stated: "The request to amend the complaint was denied (the objection having been sustained) on the grounds that (1) the request was made long after the pretrial and would have resulted in unnecessary delays, including the need for further discovery (after extensive discovery); (2) in light of [the] plaintiff's previous pleadings, the request was a rather disingenuous attempt to avoid the summary judgment motion." The plaintiff claims that the trial court abused its discretion in sustaining Reid and Riege's objection to the motion to amend.

A trial court has wide discretion in granting or denying amendments of pleadings and rarely will this court overturn the decision of the trial court. *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.*, 195 Conn. 60, 67, 485 A.2d 1296 (1985); *Citizens National Bank* v. *Hubney*, 182 Conn. 310, 312–13, 438 A.2d 430 (1980). This court will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident. *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.*, supra; *DuBose* v. *Carabetta*, 161 Conn. 254, 263, 287 A.2d 357 (1971). Practice Book § 176 provides in pertinent part that "[t]he court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If

the amendment occasions delay in the trial or inconvenience to the other party, the court may award costs in its discretion in his favor. . . ."

In this case, the motion to amend was filed after discovery was completed, and, in fact, after the motions for summary judgment were filed. In its articulation, the trial court, which was familiar with the progress of the case and the facts and issues in question, stated that the motion to amend would create unnecessary delays if granted, and that the motion was a disingenuous attempt to avoid summary judgment. Nothing in the record indicates that the trial court's ruling was incorrect or in any way an abuse of discretion.

The plaintiff last claims that the trial court improperly granted Brown and Jacobson's motion to strike the CUTPA counts from the plaintiff's complaint.

In its original complaint, the plaintiff alleged that Brown and Jacobson's negligence and simultaneous representation of the plaintiff and Zabel constituted a CUTPA violation. Brown and Jacobson moved to strike the plaintiff's CUTPA claim under Practice Book § 152.[3] The trial court, *Wagner, J.,* granted the motion to strike and issued a memorandum of decision on February 28, 1991. The trial court specifically held that the plaintiff's allegations regarding a conflict of interest did not provide a basis for finding "immoral, unethical, oppressive or unscrupulous" conduct on the part of Brown and Jacobson as required under CUTPA. The trial court further found that the plaintiff did not plead its allegations with sufficient particularity to sustain its CUTPA claim. Following the

[3] Practice Book § 152 provides in pertinent part: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof. . . ."

trial court's granting of Brown and Jacobson's motion to strike, the plaintiff amended the CUTPA count of its complaint. The sole change in the amended CUTPA count was the addition of the following statement: "The acts of defendant Brown and Jacobson, as set forth in paragraph 5 above, constituted a pattern or course of unfair or deceptive acts and practices." Brown and Jacobson again moved to strike the CUTPA count, and the trial court, *Aronson, J.,* granted the motion on May 21, 1991. The trial court found that the amended CUTPA count was substantially the same as the original CUTPA count, and held that the earlier decision granting the motion to strike was the law of the case.

"A motion to strike challenges the legal sufficiency of a pleading. *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). In reviewing the granting of a motion to strike, we take the facts alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to the plaintiff. *Mozzochi* v. *Beck,* 204 Conn. 490, 491, 529 A.2d 171 (1987). This includes the facts necessarily implied and fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the complaint. . . . *Coste* v. *Riverside Motors, Inc.,* 24 Conn. App. 109, 111, 585 A.2d 1263 (1991); see *Amodio* v. *Cunningham,* 182 Conn. 80, 83, 438 A.2d 6 (1980). If facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Stradmore Development Corporation* v. *Commissioners,* 164 Conn 548, 550–51, 324 A.2d 919 (1973)." (Internal quotation marks omitted.) *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco,* 221 Conn. 490, 495–96, 605 A.2d 862 (1992).

In ruling on Brown and Jacobson's first motion to strike, the trial court, in a well reasoned memorandum of decision, noted that "[t]he gravamen of the third count is contained in Paragraph 5 (e) which alleges that

the defendant 'represented both sides to the contemplated transaction simultaneously which resulted in a material conflict of interest.' " The trial court then set out the legal test for whether an unfair trade practice has occurred, as stated by our Supreme Court in *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 215, 579 A.2d 69 (1990). The third prong of that test is whether a practice is "immoral, unethical, oppressive, or unscrupulous." The trial court noted that Brown and Jacobson asserted that the plaintiff failed to allege the third prong, and noted further that the plaintiff argued that if Brown and Jacobson had in fact represented both sides, the third prong was satisfied. The trial court quoted rule 1.7 of the Rules of Professional Conduct, which sets forth the rules for appropriate simultaneous representation, and concluded: "A cursory reading of the rule indicates that not every conflict situation would provide a basis for a finding that the complained of conduct would be 'immoral, unethical, oppressive or unscrupulous.' A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based. *Sorisio* v. *Lenox, Inc.,* 701 F. Sup. 950, 962 (D. Conn.), aff'd, 863 F.2d 195 (2d Cir. 1988). Since the third count does not set forth allegations with sufficient particularity to sustain a CUTPA claim, the motion to strike the third count, with its accompanying claims for relief is granted." The trial court concluded, therefore, that the plaintiff, in its CUTPA claim, did not raise a claim on which relief could be granted because that claim was not presented with legally sufficient specificity. Our careful review of the complaint, taking the facts alleged by the plaintiff in the light most favorable to it, leads us to the same conclusion.

We turn now to Brown and Jacobson's second motion to strike that followed the plaintiff's amendment to the complaint, which we quoted above. We conclude that

the trial court properly determined that the previous order granting Brown and Jacobson's motion to strike was the law of the case.

"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478. In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. *Messenger* v. *Anderson,* 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912). . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. *State* v. *Hoffler,* 174 Conn. 452, 462–63, 389 A.2d 1257 (1978); *State* v. *Mariano* 152 Conn. 85, 91–92, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965)." *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d 1066 (1982).

In the present case, Brown and Jacobson moved to strike the CUTPA count of the plaintiff's complaint. The trial court granted the motion to strike, noting that the count was not pleaded with sufficient specificity. The plaintiff amended the complaint, adding a general statement about a "course of conduct." Brown and Jacobson moved to strike again. The trial court properly noted that the amended complaint was substantively the same as the previous one, and, applying the law of the case doctrine, granted the second motion to strike. We do not agree with the plaintiff's assertion that the amended complaint properly alleged a CUTPA claim.

The judgment is affirmed.

In this opinion the other judges concurred.