[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 6, 1993, the plaintiffs, Francesco and Maria Perna, filed a seven count complaint alleging various causes of actions lodged against two separate attorneys. The factual predicate for that began in November of 1988 when the plaintiffs contracted with the defendant, Ward J. Mazzucco (hereafter "Mazzucco"), in connection with a real estate CT Page 9783 transaction. The plaintiffs had decided to purchase property to enable them to relocate and expand their restaurant for a two hundred (200) seat capacity. Two mortgage commitments had been obtained from the Danbury Savings and Loan Association. One mortgage in the amount of one hundred sixty-four thousand ($164,000.00) dollars encumbered their home, and the second in the amount of two hundred ninety-four thousand ($294,000.00) dollars was utilized to purchase the restaurant.
The plaintiffs allege that without their knowledge or consent, Mazzucco represented the interests of Danbury Savings and Loan, in addition to their interests during the process of securing the financing and the subsequent closing. According to the plaintiffs, Mazzucco's responsibilities included acquiring appraisals, investigating applicable zoning ordinances, and advising them on the aspects of the proposed transaction, both business and legal. They also assert that subsequent to the closing they discovered that the purchased property was not adequate and that the new restaurant could not turn a profit because of certain zoning regulations effecting their property. Due to this, Danbury Savings and Loan filed a foreclosure action and on April 3, 1993, the plaintiffs lost their home. The action regarding the mortgage on the restaurant is still pending.
On March of 1991, the plaintiffs contracted with Attorney Richard Gordon (hereinafter "defendant"), who, after allegedly accepting a one thousand ($1,000.00) dollar retainer, was expected to render legal services in connection with their claim against Mazzucco for his alleged negligence in handling the purchase of property. They continue by saying that on November 7, 1991, the statute of limitations expired. Gordon had failed to bring suit on their behalf.
The present action against Mazzucco sounds in four counts: count one being breach of contract; count two being a breach of fiduciary duty and professional standard of care; count three being a claim of emotional distress; and, count four, alleging a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Section 42-110 et seq. of the General Statutes.
Count five of the complaint sounds in breach of contract and claims that the defendant did not adequately protect their interests by bringing their action against Mazzucco before the CT Page 9784 statute of limitations expired. As a result of the defendant's alleged breach of contract with the plaintiffs, they claim that they have lost an opportunity to recover from Mazzucco for damages they sustained as a result of his alleged negligence. Counts six and seven are also lodged against the defendant, and sound in negligence (count six) and CUTPA (count seven).
On August 10, 1993, Gordon filed a motion to strike counts five, six, and seven of the complaint on the grounds that counts five and six are premature, in addition to the fact that alternate theories of recovery are available. A claim of legal insufficiency is directed against count seven on the premise that CUTPA is "textually inconclusive as to whether the practice of law is considered a trade or commerce governed by the Act," in addition to the fact that count seven must fail for it is derivative to counts five and six.
The purpose of the motion to strike is to challenge the legal sufficiency of the allegations of any complaint. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170. In judging the motion, it does not matter whether the party can prove the allegations at trial. Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129,131. The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading. The sole inquiry is whether the plaintiff's allegations, if proved, state a cause of action. Mingachos v. CBS, Inc., 196 Conn. 91, 108.
The defendant, as indicated, argues that counts five and six are legally insufficient as they are premature and alternative remedies are available. He continues and says that the plaintiffs in the four counts directed at Mazzucco have uttered an admission. See Tough v. Ives, 162 Conn. 272,282-3. The essence of that theory is that they have a viable claim against their first attorney for acts which they later claim in counts five, six and seven which form the basis of malpractice against the defendant. Therefore, he postulates that the court should follow the holding set forth in Heritage Square Associates v. Leonard Blum, et al., 7 CSCR 992 (August 31/September 7, 1992, Nigro, J.) and grant his motion.
The plaintiffs' response to that argument is that by accepting a retainer and then failing to file a negligence CT Page 9785 action against Mazzucco before the three year period expired under section 52-576 of the General Statutes that they have lost any opportunity to recover from Mazzucco for the damages they sustained as a result of his negligence and breach of contract.[1] The defendant relies on section 152 of the Practice Book in support of his argument. That reliance is misplaced.
The language attacked in the disputed pleading set forth in the fifth and sixth counts, i.e., "premature, and alternate theories of recovery are available to the plaintiffs," hardly falls within the purview of section 152 and, consequently, is not properly before the court. The motion to strike counts five and six is denied. Count seven is derivative of counts five and six which have already been determined to have survived the motion and it too prevails.
Assuming, arguendo, that the defendant's motion had survived the plaintiffs' opposition, the court will address the merits of that motion. Practice Book, Sec. 133 provides in relevant part that:
 In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies; but, if several causes of action are united in the same complaint, they shall all be brought to recover, either . . . (6) [upon] claims arising by virtue of a contract or by operation of law in favor of or against a party in some representative or fiduciary capacity, or (7) upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action.
Section 136 recites that "[a] cause of action for legal relief for breach of contract may be joined with another cause of action for equitable relief growing out of another contract, although such contracts in no way relate to each other," and section 137 expresses that "[t]he plaintiff may claim alternative relief, based upon an alternative construction of his cause of action."
Although the claims in this case do not sound solely in breach of contract, it is clear in both spirit and language CT Page 9786 that sections 133, 136 and 137, if carried to their logical conclusion, provide that a plaintiff should be able to advance alternate theories of recovery against one or more defendants in a single complaint. Under our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint. Dreier v. Upjohn Co.,196 Conn. 242, 245. Indeed, we have never placed a limitation on a litigant's ability to put forth alternative theories of liability. The search for the truth demands that we submit separate scientific theories to the trier of fact, which may then assess matters of credibility and adopt one theory or the other, or neither. Sharp v. Wyatt, Inc., 31 Conn. App. 824,844-45.
The defendant's reliance on Heritage Square Associates v. Leonard Blum, et al., supra, which concluded that the defendants could not be held liable because (1) the plaintiff had suffered no present loss, and (2) the plaintiff had a viable alternative remedy in a contract claim which was not barred by the applicable six-year statute of limitations, is not persuasive. While this court has great respect for that court, it does not find itself compelled to defer to that opinion. Counts five and six are found to survive the motion to strike.
In what seems to have become standard practice in contemporary pleading, the plaintiff has alleged a violation of CUTPA. In determining whether a case falls within the scope of CUTPA's general description of unfair or deceptive practices, our courts have adopted the "cigarette rule" set forth in FTC v. Sperry Hutchinson Co., 405 U.S. 233,92 S.Ct. 898, 31 L.Ed.2d 170 (1972). "Under that standard, three factors will be looked at to determine if an action or practice is unfair: `(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law statute, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injuries to consumers. . . .'" Noble v. Marshall, 23 Conn. App. 227, 229; Mead v. Burns, 199 Conn. 651,664-65; Dow Condon, Inc. v. Anderson, 203 Conn. 475,483, quoting FTC v. Sperry Hutchinson Co., supra, 244, n. 5. CT Page 9787 "CUTPA is textually inconclusive on the question of whether the practice of law is included within the conduct of trade or commerce." Heslin v. Connecticut Law Clinic of Trantolo 
Trantolo, 190 Conn. 510, 517. It is clear that the provision of at least some legal services constitutes "the conduct of any trade or commerce," and that CUTPA applies to the conduct of attorneys; id. 520-521; but not every claimant who alleges attorney misconduct states a cause of action under CUTPA. Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc.,190 Conn. 528, 532.
In the present case, the defendant alleges that the plaintiffs have failed to allege facts which offend public policy, which are immoral, unethical, oppressive or unscrupulous, and which cause substantial injuries to consumers. The plaintiffs respond that all three criteria as provided in the "cigarette rule" need not be met in order for a valid CUTPA claim to exist. They argue that by alleging that the defendant accepted a retainer for services not rendered, they have alleged a violation of public policy which constitutes an immoral and an unethical act.
In examining the seventh count of the complaint, there appear to be allegations, inter alia, that the defendant, by accepting the retainer and allowing the statute of limitations to expire on a claim against Mazzucco, has engaged in conduct which was unethical, immoral and outrageous. Furthermore, the plaintiffs allege that not only are the parties involved in the present dispute "persons" within the meaning of section 42-110, et seq. of the General Statutes, but that the activities of the defendant, i.e., the acceptance and retention of a retainer for work not performed, constitutes an unfair and deceptive practice. Finally, they claim that as a consequence of the defendant's unfair and deceptive trade practices, they have suffered damages for which the defendant is liable. Viewed in the light most favorable to the plaintiffs, the allegations contained in the seventh count of the complaint, regardless of whether they can be proven at trial, are legally sufficient and within the parameters of the "cigarette rule." Therefore, the defendant's motion to strike does not prevail over the seventh count.
The defendant's motion to strike is, accordingly, denied.