[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE (No. 114)
I. FACTS:
The plaintiffs are comprised of several parties: DowCom, Inc. ("DowCom"); John R. Butler ("Butler"); Robert F. Downing ("Downing"); and Lauren M. Miralia ("Miralia"). All of the parties will be collectively referred to as "plaintiffs". The plaintiffs allege that they hired the defendants Kutak Rock and two of its attorneys, Mark Nethers and Steven F. Stratman, to provide legal services connected with the development of government subsidized low-income housing projects. The plaintiffs allege that the defendants assisted them in drafting the legal documents for the real estate ventures and negotiated with various parties to obtain the financing. The defendants drafted the documents to incorporate DowCom, Inc. and CDC 1990 Limited Partnership ("CDC"). DowCom borrowed $910,000. from First Central Bank ("FCB"), with the loan being personally guaranteed by Downing and Miralia. The defendants prepared the reimbursement agreement. Thereafter, DowCom and CDC loaned sums of money to several real estate ventures,[1] the loans being secured by promissory notes.
The defendants handled the financial negotiations with John Hancock Mutual Life Insurance ("John Hancock") for the borrowing of additional funds for the real estate ventures. John Hancock required DowCom and CDC to release their promissory notes to John Hancock as a condition of the loan. The defendants allegedly told the plaintiffs that the promissory notes would CT Page 4112-TT be replaced with security of an equivalent nature. This new security was called the "Remittance Amounts". The Remittance Amounts consisted of excess funds in the partnerships after satisfying John Hancock. Downing allegedly requested the defendants to perfect Downing and Miralia's interest and Stratman allegedly represented the necessary legal papers would be drawn to perfect the security interest in the Remittance Amounts.
The defendants did prepare and file UCC-1 financing statements on behalf of the plaintiffs; however, the financing statements were filed on the wrong entity. It is alleged the defendants never filed a UCC-1 financing statement on the Seabrook Association Limited Partnership ("Seabrook") which subsequently filed for bankruptcy protection. Lastly, it is alleged that the plaintiffs brought the defendants failure to perfect the Seabrook security interest to the defendants' attention, and the defendants refused to render assistance, stating a conflict of interest existed between the defendants' representation of Seabrook and the plaintiffs. As a result of the failure to perfect the plaintiffs' security interest, the plaintiffs claim they suffered damages when Seabrook obtained bankruptcy protection, since the plaintiffs are personally liable on the loans.
The complaint states essentially a cause of action for negligent malpractice and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The CUTPA counts, counts thirteen through twenty-four, are the subject of the defendants' motion to strike. The defendants have filed a memorandum in support of their motion, dated December 5, 1995. The plaintiffs filed an objection to the defendants' motion to strike by a supporting memorandum, dated January 19, 1996. The court heard argument on this matter on March 12, 1996.
II. DISCUSSION:
"A motion to strike challenges the legal sufficiency of a pleading . . . [I]t admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Citations omitted).Mingachos v. CBS, Inc., 196 Conn. 91, 108-09, 491 A.2d 368
(1985). Further, the court must construe the facts in the CT Page 4112-UU pleadings, which are the subject of the motion to strike, most favorably to the pleader. Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988).
The defendants stated the ground for their motion as "[s]pecifically, Counts Thirteen through Twenty-four fail to set forth sufficient facts to support a violation of the Connecticut Unfair Trade Practices Act."
Neither party has disputed that CUTPA applies to the legal profession.[2] The real issue before this court, as briefed by the parties, is: whether a legal malpractice negligence cause of action precludes a CUTPA cause of action, where both actions are based on the same facts?
CUTPA
The Connecticut Unfair Trade Practices Act, General Statutes § 42-110b(a), provides in relevant part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
"[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citation omitted.).Web Press Services Corporation v. New London Motors Inc.,203 Conn. 342, 355, 525 A.2d 57 (1987). "In determining when a practice is unfair, we have adopted the criteria set out in the 'cigarette rule' by the federal trade commission . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (competitors or other businessmen). . . ." (Citations omitted, internal quotation marks omitted.) A-G Foods, Inc. v.Pepperidge Farm, Inc., 216 Conn. 200, 215, 579 A.2d 69 (1990).
The plaintiffs allege that the defendants' failure to notify the plaintiffs of its representation of Seabrook, which was a conflict of interest, failure to properly file the UCC-1 financing statement against Seabrook to perfect the plaintiffs' security interest, and their refusal to correct the filing error CT Page 4112-VV when it was discovered is not only legal malpractice, but also a violation of CUTPA.
Procedurally, plaintiffs complaint is technically defective. "A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." S. M. S. Textile v. Brown Jacobson, Etc.,P.C., 32 Conn. App. 786, 797, 631 A.2d 340 (1993).
The plaintiffs' narrative form of its complaint is contrary to the dictates of Practice Book § 138,[3] and its incorporation of the facts from the preceding count is contrary to the express particularity required by S. M. S. Textiles, supra. Not wanting to put form over substance, however, the court will look at the defendants' argument on the merits. Substantively, the defendants allege the plaintiffs must plead all three prongs of the cigarette rule because the plaintiffs' cause of action is based in negligence. "[T]he first prong, standing alone, is insufficient to support a CUTPA violation, at least when the underlying claim is grounded solely in negligence."A-G Foods. Inc. v. Pepperidge Farm. Inc., supra216 Conn. 217; Gersich v. Enterprise Rent A Car, 1 Conn. Ops. 1387 (USDC, December 18, 1995, Nevas, J.) (plaintiff's claim sounded in negligence per se, thus, plaintiff must satisfy all three prongs of the cigarette test).
The plaintiffs have cited Cheshire Mortgage Service,Inc. v. Montes, 223 Conn. 80, 105, 612 A.2d 1130 (1992) for the proposition that it need only satisfy one prong of the cigarette rule for a CUTPA cause of action sounding in unfairness. ("All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."). The court finds that the prevailing authority requires the plaintiffs satisfy all three prongs of the cigarette rule, and the plaintiffs must do this by setting forth the necessary facts in the body of the CUTPA count, with particularity.
The plaintiffs attempt to plead the public policy prong in ¶¶ 19, 24, 27. In these paragraphs the plaintiffs allege that the failure of the defendants to file the correct UCC-1 financing statements, to correct their error or take other measures, and to notify the plaintiffs of that failure, violates public policy. The plaintiffs' complaint falls short of CT Page 4112-WW establishing that the defendants' negligent conduct "offends public policy as it has been established by statutes, the common law, or otherwise" to the level of a CUTPA violation.
The plaintiffs allege the second prong of the cigarette rule "immoral, unethical, oppressive, or unscrupulous conduct", has been met by pleading the defendants' failure to correct the misfiling upon discovery, failure to notify the plaintiffs of the error, and the defendants' refusal to discuss the matter stating a conflict of interest. The court finds this conduct more appropriate to the negligence cause of action and not the type of behavior that CUTPA was created to prevent. The plaintiffs have failed to plead the defendants' actions were done "with the intent, and/or knowledge of the harm to the plaintiffs," nor do the plaintiffs allege the defendants intentionally ignored the request of the plaintiffs to file the UCC-1 statement.
The plaintiffs argue that the third prong of the cigarette rule, "substantial injury to the public" was sufficiently pled by stating the plaintiffs suffered economic losses as a result of the unperfected security interest on Seabrook; had it been a perfected creditor, the available money would have been distributed to the plaintiffs. The plaintiffs have sufficiently pled this prong, although the proper method would have been to set it forth in the body of the CUTPA count and not by incorporation.
The plaintiffs' complaint fails to plead all three elements of the cigarette rule which this court finds necessary in an underlying negligence cause of action. According to A-GFoods, Inc. and Gersich, supra, which this court adopts, this failure is fatal. Accordingly, the court grants the motion to strike counts thirteen through twenty-four.
It should be noted as both parties rightfully concede, there is limited appellate authority on point. The only case that counsel and the court located was S. M. S. Textile v.Brown, Jacobson, Etc., P.C., supra, 32 Conn. App. 796. In S. M. S.Textile the plaintiff, a stock purchaser, brought a legal malpractice action against the law firm that represented both the plaintiff and the sole shareholder. The plaintiff alleged the law firm's conflict of interest was a violation of CUTPA. The trial court struck the CUTPA counts stating the plaintiff's mere allegations of a non-disclosed conflict of interest did not provide a basis for a finding of unethical and unscrupulous CT Page 4112-XX conduct. Id., 795. The plaintiff repleaded and added language stating the law firm's actions constituted a pattern of unfair and deceptive acts and practices. This was also stricken by the trial court. Id., 796. The plaintiff appealed the decision and the Appellate Court affirmed stating: "a claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." Id., 797.
In Vasquez v. Reveron, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 040066 9 Conn. L. Rptr. 205
(June 3, 1993) (Curran, J.) (8 CSCR 673), the plaintiffs alleged that their attorney breached his duty to exercise reasonable care, skill and diligence on plaintiffs' behalf by failing to recognize that the sellers' mortgage was not assumable. The court struck the CUTPA count because the plaintiffs failed to satisfy the cigarette rule; they did not allege that the defendant's actions offended public policy or were immoral, unethical, oppressive or unscrupulous, and failed to allege more then a single transaction.
In Sobol v. Gersten, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 516557 (March 6, 1995) (Allen, STR), the plaintiffs sued their attorney for failing to disclose a conflict of interest in the purchase of a parcel of real estate. The court adopted the holding inA.G. Foods, Inc. and Vasquez and stated: "The court does not believe this legal malpractice case which is (for the most part) grounded in negligence satisfies the cigarette rule."
In Dowd v. Eldergill, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 533384 (February 6, 1995) (Allen, STR), the plaintiff merely alleged his attorney breached the standard of care. In striking the CUTPA count, STR Allen stated:
 Essentially plaintiffs have alleged that the defendants were negligent. In order to be entitled to a CUTPA claim, plaintiffs must assert an unfair and deceptive practice, not simply negligence in the performance of legal duties. Ivey Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528 (1983); Vasquez v. Reveron, 9 Conn. L. Rptr. 205, 8 CSCR 673 (1993)."
The plaintiffs rely on Chapman v. Gould, Larson,CT Page 4112-YYBennet Munro, Superior Court, judicial district of New London at New London, Docket No. 520919 252 (April 7, 1992) (Hurley, J.) (6 Conn. L. Rptr., 7 CSCR 488) for the proposition that an attorney's failure to file a UCC-1 financing statement and notify the client of his failure, is a violation of CUTPA.
Chapman was decided prior to S. M. S. Textile and thus, to the extent it permits a CUTPA cause of action for the attorney's negligence, this court chooses not to adopt it.
Next, the plaintiffs cite Presnick v. Bond, Superior Court, judicial district of Waterbury, Docket No. 1063966 Conn. L. Rptr. 475
(May 27, 1992) (Langenbach, J.) (7 CSCR 681). In this case the court permitted the CUTPA count where the defendant attorney was allegedly double billing the plaintiff, billing the plaintiff for work negligently performed or for work not performed at all. However, it is important to note, this decision, like Chapman,
is prior to the Supreme Court decision in S. M. S. Textile, and to the extent that it is contrary, this court will not adopt
Lastly, the plaintiff cites Perna v. Gordon, Superior Court, judicial district of Danbury, Docket No. 314016 (November 12, 1993) (Moraghan, J.) (8 CSCR 1232). In Perna, the court permitted a CUTPA cause of action where the plaintiff alleged the defendant attorney accepted a retainer for services not rendered and allowed the statute of limitations to expire on a claim, as being unethical, immoral and outrageous. The Perna
case is distinguishable from the instant case. In Perna the attorney's actions were not simple negligence, as in the instant case. Further, in the instant case, the Defendants did file UCC-1 financing statements, however, they were on the wrong entity.
Clearly, there is a lack of appellate guidance on this issue. However, S. M. v. Textile has been decided and is binding on this court.
Applying that rational to the instant case, the plaintiffs allege that they specifically instructed the defendants to obtain a security interest in the Seabrook partnership. The defendants allege they did make UCC-1 filings, however, they filed the incorrect paperwork, resulting in the failure of the plaintiffs' perfected security interest. As previously stated in this decision, the facts alleged by the plaintiffs are insufficient to sustain the CUTPA cause of action. The scope of CUTPA does not cover a CT Page 4112-ZZ cause of action for negligent legal malpractice, even when taken in the light most favorable to the plaintiff.
Additionally, the plaintiffs allege the defendants' conduct in declaring a conflict of interest when the plaintiffs notified the defendants of the failure of the security interest and Seabrook's bankruptcy amounts to intentionally unfair and deceptive acts. This course of conduct that the plaintiffs set forth in narrative form in their complaint, is insufficient, even when taken in the light most favorable to state a cause of action in CUTPA.
Finally, the plaintiffs allege that both parties had ongoing relationship for over four years encompassing the period of these transactions. Further, during that period, the plaintiffs claim the defendants should have notified the plaintiffs of the conflict of interest and the failure to perfect, the defendants having been responsible for most of the negotiations and legal forms.
The plaintiffs have failed to establish more then a single transaction. All of the plaintiffs' damages resulted from the failure of the defendants to correctly file the UCC-1 financing statement on Seabrook. There is no appellate authority on whether or not a single transaction can constitute a CUTPA violation. Trial courts are split on this issue, but this court has consistently required more then a single transaction.
III. CONCLUSION:
The defendants' motion to strike the plaintiffs' CUTPA counts is granted as each of the counts fails to satisfy the necessary requirements of a CUTPA count.