[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant Nutmeg Painting Inc. has filed a motion to strike the third count of the plaintiffs revised complaint which alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq., on the grounds that it fails to state a claim upon which relief can be granted. Nutmeg Painting Inc. also asks that those sections of the prayer for relief seeking punitive damages and CT Page 10579 attorney's fees be stricken as they are dependent on the plaintiffs CUTPA claim. Specifically, the defendant Nutmeg Painting Inc. asserts that the third count is deficient because it fails to allege facts sufficient to satisfy the so called "cigarette rule" criteria which are required to assert a CUTPA claim.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations and internal quotation marks omitted.) Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 214 (1992). A motion to strike admits all facts well pleaded, but it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc., 196 Conn. 91,108 (1985).
The plaintiffs revised complaint alleges that Nutmeg Painting, Inc. was hired by the defendants Michael G. and Mary Kate Adami-Sampson, the owners of the property located at 76-78 Howard Avenue in New Haven, which apparently is adjacent to property owned by the plaintiff at 82-84 Howard Avenue. During the course of its work for the Adami-Sampsons, the revised complaint alleges that Nutmeg Painting, Inc. "allowed lead paint chips and debris to strike the exterior of the plaintiffs premises and remain upon the plaintiffs grounds . . ." The second count of the revised complaint asserts a claim of negligence against Nutmeg Painting Inc. in that they failed to avoid having lead paint chips and debris land upon the plaintiffs premises, failed to remove the lead paint chips and debris, failed to warn others of their carelessness and lack of training, failed to keep a reasonable lookout for the damage they were causing and failed to exercise reasonable care under the circumstances. The third count of the revised complaint, which is the count at issue here, simply repeats the allegations of the negligence count and adds an allegation that the acts alleged constitute a violation of CUTPA in that they are against public policy resulting in an ascertainable loss to the plaintiff and they were immoral, unethical, oppressive, unscrupulous and caused substantial injury to the plaintiff.
Nutmeg Painting Inc. claims that the third count of the revised complaint is legally insufficient to state a CUTPA claim because it does nothing more than reassert the allegations of negligence coupled with legal conclusions that the defendant's acts violate CUTPA. The plaintiff contends that by alleging that Nutmeg Painting Inc. allowed lead paint chips and debris to strike the exterior of the plaintiffs premises and remain upon the grounds the third count contains sufficient allegations of fact to state a violation of CUTPA. CT Page 10580
The Connecticut Unfair Trade Practices Act (CUTPA) states that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b(a). The test for ascertaining whether a practice is unfair in the eyes of CUTPA is well-established. "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businessperson. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Moreover, this court has set forth a three part test for satisfying the substantial injury criterion: (1) the injury must be substantial; (2) it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (Citations and internal quotation marks omitted.) Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,367-368 (1999)
Even examined in the light most favorable to the plaintiff, the complaint fails to allege sufficient facts that if proven would meet the test for unfairness established by the cigarette rule. The complaint as written lacks crucial facts that indicate that the practice complained of offends the public policy of this state or is immoral, unethical, oppressive or unscrupulous. The only facts contained in the plaintiffs complaint with respect to these issues are that Nutmeg Painting, Inc. allowed lead paint chips and debris to strike the exterior of the plaintiffs premises and remain upon the plaintiffs grounds.[1]
The public policy of this state with respect to lead paint is set forth in General Statutes § 19a-111 et seq. and its accompanying regulations, § 19a-111-1, et seq. of the Regulations of Connecticut State Agencies. General statutes § 19a-111c requires the owner of any dwelling in which paint contains toxic levels of lead and in which children under the age of six reside to abate or manage such dangerous materials consistent with regulations adopted by the Department of Public Health. According to the department's regulations, toxic level of lead means a level of lead which: CT Page 10581
 when present in a dried paint, plaster or other accessible surface in a residential dwelling contains more than 0.50 percent lead by dry weight as measured by atomic absorption spectrophotometry (AAS), graphite furnace atomic absorption spectrophotometry (GFAAS), or inductively coupled plasma atomic emission spectrophotometry (ICP-AES) by a laboratory approved by the department for lead analysis, or more than 1.0 milligrams lead per square centimeter of surface as measured on site by an X-ray fluorescence analyzer or other equipment deemed sufficiently accurate and reliable by the commissioner.
Regs., Conn. State Agencies § 19a-111-1(59)B.
The regulations of the Department of Health require the owner of a dwelling in which a child under the age of six resides to prepare and submit a written lead abatement plan when toxic levels of lead requiring abatement have been identified. Regs., Conn. State Agencies § 19a-111-4
(a). The plan shall describe repair work necessary prior to abatement, all surfaces and soil areas containing toxic levels of lead, the sampling and testing methodologies utilized, how surfaces and soil areas requiring abatement will be abated, clean up procedures, and clearance testing prior to reoccupancy. Id. The owner is required to insure that the abatement area is properly contained to prevent lead dust from contaminating the dwelling or environment, Regs., Conn. State Agencies § 19a-111-4 (c)(2) and to follow strict procedures with respect to clean up, Regs., Conn. State Agencies § 19a-111-4(c)(4).
In light of the above, two crucial factual allegations are missing from the plaintiffs complaint. The complaint claims neither that the paint which fell on the plaintiffs property contained toxic levels of lead nor that the lead paint was accessible to children under the age of six. The stringent requirements mandated by the statute and the regulations with respect to toxicity and which is present in a dwelling where young children reside. Since the public policy of this state as embodied in its statutes and regulations is concerned only with toxic lead paint that is accessible to children less than six years of age, the third count of the plaintiffs revised complaint absent allegations that the lead paint was toxic and that it was accessible to children less than six years old fails to allege facts sufficient to show the type of unfair practice prohibited by CUTPA.
It has been this judge's limited experience that many plaintiffs simply append a CUTPA claim at the end of their complaint with little or no CT Page 10582 thought to its applicability in the hopes of obtaining the benefits of the statute's potent remedies, such as attorney fees and punitive damages. While CUTPA is undoubtedly a broad statute with considerable reach, it does not cover the universe of offensive practices and its applicability to the acts complained of must be precisely plead. SeeS.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 797 (1993), cert. denied, 228 Conn. 903
(1993).
The motion of the defendant Nutmeg Painting, Inc. to strike the third count of the revised complaint and its prayer for punitive damages and attorney's fees is hereby granted.
BY THE COURT
Judge Jon M. Alander