[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
On September 17, 1999, the plaintiffs[1] commenced the present action by service of process upon the defendant Bergman, Horowitz Reynolds, P.C. (BHR). On August 18, 2000, the plaintiffs filed a fifth amended complaint alleging that on November 9, 1987, BHR negligently prepared a will for Emma N. Stursberg causing assets valued at $129,117.83 to pass to Almeda May Morrison, rather than the decedent's beneficiaries. The plaintiffs allege that in early 1987, Joan Bozek, an associate at BHR, met with Emma Stursberg, a widow, at her home to discuss drafting a will. As part of the estate planning interview, Bozek questioned Emma Stursberg concerning her personal and financial matters. During the course of the interview, however, Bozek failed to obtain a copy of Emma Stursberg's late husband's will. As it turned out, Julius Stursberg's will created a trust in favor of Emma Stursberg and provided her with the general power of appointment over its assets.
Following the estate planning interview, Bozek drafted a will for Emma Stursberg. Upon reviewing the document Emma Stursberg made numerous changes because the will was substantially longer than the two pages she had requested. After the revisions, Emma Stursberg executed the will on November 9, 1987. In the will Emma Stursberg bequeathed to her nephew, David Shiffrin, her Tiffany dishes, several books, pictures, and phonograph records. She bequeathed her jewelry and a share of her condominium to her sister, Lillian Stein. The remainder of the condominium was left to her other sister, Dorothy Shiffrin. In addition, she bequeathed $10,000 to a friend, Marilyn Fleer, $3000 to a synagogue, and $500 to the Jewish Home for the Aged. The residue, which expressly excluded any property over which she "may have the power to appointment" at the time of her death, was bequeathed to Lillian Stein, Dorothy Shiffrin, Robert Shiffrin (a nephew), David Shiffrin, and Anne Tellerman (a niece).
In April of 1991, BHR, with Bozek acting as counsel, had Dorothy Shiffrin appointed conservator of her sister's estate. In or about September 1992, Bozek left BHR and became associated with the firm of Peck Tuneski. On September 17, 1992, BHR, at the request of Dorothy Shiffrin, sent Emma Stursberg's legal files to Peck Tuneski. While Bozek continued to represent Emma Stursberg and her affairs, she did so for the firm of Peck Tuneski. As a result, after September 17, 1992, BHR no longer represented Emma Stursberg or her estate.
On September 6, 1997, Emma Stursberg died. On February 11, 1998, the CT Page 16198 Probate Court granted administration of Emma Stursberg's will. The general power of appointment over the trust created by Julius Stursberg, however, remained unexercised and the assets under the trust, valued at $129,117.83, reverted to Emma Stursberg's step daughter, Almeda May Morrison. In addition, the taxes attributable to those assets was paid out of Emma Stursberg's estate.
On March 24, 2000, BHR moved for summary judgment on the grounds that (1) the action is time barred by Connecticut's three year statute of limitations for tort actions; and (2) in the absence of any attorney-client relationship, BHR owed no legal duty to plaintiffs. On September 8, 2000, the plaintiffs objected to BHR's motion, asserting that by acting as counsel in connection with the application for conservator of the decedent, BHR created a "special relationship" which gave rise to a continuing legal duty owed to the estate of the decedent. The court heard oral argument on the motion on September 11, 2000.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party entitled to judgment as a matter of law. . . .In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Brackets in original; internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). "Summary judgment may be granted where the claim is barred by the statute of limitations."Doty v Mucci, 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitation grounds when the "material facts concerning the statute of limitations [are] not in dispute. . . ." Burnsv. Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984).
In the present case, it is undisputed that the plaintiff commenced an action for legal malpractice against the defendant BHR on September 17, 1999. In Connecticut, the tort of legal malpractice carries a three year statute of limitations period. General Statutes § 52-577.[2] Thus, for the plaintiffs claim to survive summary judgment the defendant, BHR must have committed legal malpractice at some point during the three years prior to September 17, 1999. CT Page 16199
"In general the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages."Mayer v. Biafore, Florek O'Neill, 245 Conn. 88, 92, 713 A.2d 1267
(1998). As such, the plaintiffs must establish the existence of an attorney-client relationship which gave rise to a duty sometime within the previous three years.
Construing the facts in the light most favorable to the plaintiff, the latest date that BHR had an attorney-client relationship with Emma Stursberg was September 17, 1992. On that date, BHR ceased to represent Emma Stursberg's estate by sending the Stursberg legal files over to Bozek at Peck Tuneski for future representation. The plaintiffs claim that because BHR acted as counsel during conservator proceedings prior to 1992, the alleged negligence occurring after 1992 is imputable to the defendant. Under the general principles of agency law an employee's negligence can only be imputed to the employer during the scope of employment. A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200,208, 579 A.2d 69 (1990); see also Mullen v. Horton, 46 Conn. App. 759,765, 700 A.2d 1377 (1997). Because Bozek was not employed by BHR after September 17, 1992, and more importantly the representation of Emma Stursberg after September 17, 1992 was handled by Bozek and Peck Tuneski, any alleged negligence occurring after BHR's representation ceased cannot be imputed to BHR. As such, the three year statute of limitations against BHR began running on or before September 17, 1992, the last date on which an attorney-client relationship existed between Emma Stursberg and BHR.
The plaintiffs further argue that the limitation period was tolled by the continuing course of conduct doctrine. In support of this proposition the plaintiffs cite Fichera v. Mine Hill Corporation, 207 Conn. 204,212, 541 A.2d 579 (1988). The court in Fichera leaves open the possibility of a "special relationship between the parties giving rise to . . . a continuing duty" in the context of a CUTPA claim. Id, 210. The Supreme Court in Fichera, however, goes on to hold, "[i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, [the Supreme Court has] concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." (Internal quotation marks omitted.) Id, 212. In other words, the language of General Statutes § 52-577 requires that the limitations period begins running on the occurrence of the act or omission complained of, not the occurrence of the injury. In the present case, the act or omission outlined in the CT Page 16200 plaintiffs claim was an ongoing failure of BHR to counsel Emma Stursberg that, in light of new financial information allegedly discovered after the drafting of the will on November 9, 1987, the intended result of her will may have changed.
The Supreme Court has held that "the continuing course of conduct doctrine has . . . been applied to toll the statute of limitations."Blanchette v. Barrett, 229 Conn. 256, 275, 640 A.2d 74 (1994). "[I]n order [t]o support a finding of continuous course of conduct that may toll the statute of limitations there must be evidence of a breach of duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . .Where [the Connecticut Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotations marks omitted.) Id.
In a legal malpractice claim, however, the Appellate Court has held "[t]here is no tolling of statutes of limitation in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once representation of the client is complete and the document executed, any warning would be ineffective." Sanborn v. Greenwald, 39 Conn. App. 289,297, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). "The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete, such as medical malpractice, rather than one where the situation cannot change, such as legal malpractice arising from negligent drafting of the written word." Id., 297-98.
In the present case, both parties cite the affidavit of Joan L. Bozek as evidence of the relationship between the plaintiffs and the defendant. Bozek avers, "[i]n or about September 1992, I left Bergman, Horowitz Reynolds, P.C. and became associated with the law firm of Peck Tuneski. I took the representation of Ms. Stursberg with me to Peck Tuneski. I asked Dorothy Shiffrin, who by that time had been appointed conservatrix for Ms. Stursberg, to send a letter to Bergman, Horowitz Reynolds, P.C., requesting that her file be sent to my new firm Peck Tuneski. On or about September 17, 1992, Bergman, Horowitz Reynolds, P.C., delivered the legal file to me at the office of Peck Tuneski." (Bozek Affidavit ¶¶ 21-23.) Thus, it is undisputed, based on the affidavit of Joan L. Bozek, that the defendant's representation of Emma CT Page 16201 Stursberg ended on or about September 1992. In S.M.S. Textile v. Brown,Jacobson, Tillinghast, Lahan, King, P.C., 32 Conn. App. 786, 790-93,631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993), the court concluded that the continuing course of representation rule does not toll the statute of limitations after the attorney ceases to represent the client. Any duty BHR owed Emma Stursberg or her estate, terminated when they discontinued representation.
The basic purpose of statutes of limitation is to promote finality in the litigation process. Pintavalle v. Valkanos, 216 Conn. 412, 417,581 A.2d 1050 (1990). In particular, "[a] statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) Wynn v. Metropolitan Property Casualty Ins.Co., 30 Conn. App. 803, 808, 623 A.2d 66 (1993), aff'd, 228 Conn. 436,635 A.2d 814 (1994); see also Gurliacci v. Mayer, 218 Conn. 531, 548,590 A.2d 914 (1991); Beebe v. East Haddam, 48 Conn. App. 60, 67,708 A.2d 231 (1998).
In the present case, the defendants have not acted as counsel on behalf of the decedent since 1992. Seven years later, BHR should be afforded the opportunity to manage their affairs without worrying about the burden of perpetual liability from a stale malpractice claim. Given that any alleged negligence by BHR could only have occurred prior to September 17, 1992, and the statute of limitations is not tolled by the continuing course of conduct doctrine, the statute of limitations has run. Therefore, the defendant's motion for summary judgment is granted.
The evidence offered by both parties is insufficient to support a finding that the material facts concerning the statute of limitations are in dispute. Furthermore, the statute of limitations for a tort action began running against BHR on September 17, 1992. Therefore, because this action was not commenced until September 17, 1999, it is barred by the statute of limitations. The defendant's motion for summary judgment is granted.
Howard F. Zoarski, Judge Trial Referee