# ALEXANDER PROKOLKIN *v.* GENERAL MOTORS CORPORATION

LOISELLE, BOGDANSKI, LONGO, MACDONALD and MULVEY, Js.

Argued October 15, 1975—decision released March 2, 1976

*Wesley W. Horton* and *James A. Kane, Jr.,* for the appellant (plaintiff).

*Robert P. Volpe,* with whom was *Valentine J. Sacco,* for the appellee (defendant).

MacDonald, J.  The plaintiff, who suffered personal injuries in an automobile accident and who also paid certain sums of money to settle the claims

of passengers who suffered injuries in the same accident in the automobile owned and operated by him, seeks by this appeal to reinstate two jury verdicts which awarded him damages of $12,000 for his personal injuries and $18,375 by way of indemnification. Recovery in each instance was premised upon the strict products liability of the defendant, General Motors Corporation, the manufacturer of the automobile owned and operated by the plaintiff at the time of the accident. The trial court, holding that the actions were barred by the applicable statutes of limitations, rendered judgment for the defendant notwithstanding the verdicts and ordered a new trial for the claim for indemnification under the negligence count of the complaint on the ground that that particular cause of action had not been submitted to the jury. The facts, as set forth in the finding, are not in dispute, nor is any question raised as to the correctness of the court's charge or its rulings on evidence, and the principal issue for our determination is whether the court erred in holding that the plaintiff's claims, based on the theory of strict products liability, were barred by our statutes of limitations.

The action arose out of a two-car collision which occurred in Canton on October 14, 1961, at which time the plaintiff was driving a Chevrolet Corvette which the defendant had manufactured and sold to a consumer in early 1959 and which the plaintiff, in turn, had purchased as a second-hand car in March, 1960. The plaintiff alleged and claimed to have proved that the defective manufacture of the limited slip differential in the 1959 Corvette caused it to skid upon a wet road surface into the left-hand lane of the highway where it was struck by an oncoming car. He also alleged and claimed to have

proved that when the defendant discovered that the substitution of Belvil plates would improve the operation of the limited slip differential, it failed to notify the public in general or the purchasers of its 1959 Corvettes in particular that the 1959 or earlier model Corvettes should have the newer plates installed.

The plaintiff did not bring suit against the defendant until July 10, 1964, which was approximately five years after the sale of the Corvette to its original purchaser, four years after its purchase, second-hand, by the plaintiff, thirty-three months after the date of the accident, but less than one year after his settlement of a suit brought against him by the two injured passengers in his car. The first count of the original complaint sounded in implied warranty and the second count in negligence. Upon motion of the defendant, a summary judgment was rendered in its favor with respect to the plaintiff's personal injury claim on the negligence count on the ground that it was barred by § 52-584 of the General Statutes because it had not been commenced "within one year from the date when the injury is first sustained 'or discovered,"[1] and no appeal was taken from that judgment. On October 13, 1972, the plaintiff filed a motion for per-

---

[1] "[General Statutes] Sec. 52-584. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, chiropodist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counter-claim may be interposed in any such action any time before the pleadings in such action are finally closed."

mission to add a third count to the complaint alleging a cause of action based upon strict products liability as expounded by this court in the case of *Rossignol* v. *Danbury School of Aeronautics,* 154 Conn. 549, 227 A.2d 418. The defendant's objection to this motion was overruled and the addition of the new third count was permitted by the court on the theory that the products liability claim was "simply a more recent development of the law pertaining to breach of warranty and that the amendment to the complaint adding the third count did not state a new cause of action."[2]

In each count of the amended complaint, the plaintiff sought relief for both personal injuries and indemnification for the sums paid by him in settlement of the suit brought against him by the passengers injured in his car, and, at trial, the court submitted only the third count of strict products liability to the jury but charged, without exception, that a verdict on this count would also determine the implied warranty count.

## I

In the first of his two assignments of error, the plaintiff claims that the court erred in granting the defendant's motion to set aside the ver-

[2] The plaintiff did not allege any new facts in the 1972 third count, and this court stated in *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724: "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action." The defendant has not assigned error to the court's ruling allowing the filing of the amended third count, and, in light of our disposition of the Statute of Limitations issue, we do not consider the separate issue thereby raised.

dicts based on strict liability and to render judgment n.o.v. for the defendant on the ground that these actions were not, as ruled by the court, barred by § 52-577 of the General Statues,[3] claiming, in substance, a continuing course of conduct on the part of the defendant which tolled the running of the Statute of Limitations. Our previous decisions make it clear that § 52-577 states the limitation pertinent to a strict liability action. "The three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 491, 234 A.2d 825; see *Tuohey* v. *Martinjak,* 119 Conn. 500, 506–507, 177 A. 721. The exact wording of the statute, barring the bringing of any action founded upon a tort *"but within three years from the date of the act or omission complained of,"* pinpoints the basic question here as being just what actually constituted "the act or omission complained of" in the plaintiff's strict liability count or, in other words, just when did the three-year Statute of Limitations commence to run against the plaintiff's strict liability cause of action?

The words "act or omission complained of" are found not only in § 52-577 but also in § 52-584, previously cited,[4] the limitation statute for specific tort actions, more especially those based upon negligence. In adopting this specific language, our legislature distinguished Connecticut's statutes of limitations for torts from those of other jurisdictions, the majority of which begin to run only "after the cause

[3] "[General Statutes] Sec. 52-577. ACTION FOUNDED UPON A TORT. No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[4] See footnote 1, supra.

of action has accrued." See 63 Am. Jur. 2d, Products Liability, § 223, and 3 Frumer & Friedman, Products Liability § 39.01 [2], wherein are emphasized the controlling effect of the precise wording of the Connecticut statutes of limitations,[5] with particular reference to the decision of the Circuit Court of Appeals for the Second Circuit in *Dincher* v. *Marlin Firearms Co.*, 198 F.2d 821, 822–23, wherein, the majority (*Chase* and *Augustus Hand, Js.*), in construing the exact wording of the statute under consideration, made the following observations which are particularly pertinent to our present discussion: "Turning now to § 8324 [predecessor to § 52-584], it should be noticed that its forerunner, § 6015, Connecticut General Statutes (Revision 1930), limited the time within which actions could be brought to recover damages for injury to the person caused by negligence to one year 'from the date of the injury or neglect complained of' and

---

[5] "As regards the commencement of the period of limitations against a tort action, the general rule is that the cause of action accrues when, but only when, the force wrongfully put into motion produces injury, and this rule has often been applied to products liability cases grounded on negligence. . . . However, there have also been rulings under particular statutes of limitation that such a statute runs from the time of the negligent act or omission, even though the total damage sustained cannot be ascertained until a later date. Such rulings are traceable to the language of the applicable limitations statute [citing *Dincher* v. *Marlin Firearms Co.*, 198 F.2d 821 (2d Cir.)]." 63 Am. Jur. 2d, Products Liability, § 223.

"It is the general rule in products liability-negligence cases, as in negligence cases generally, that where plaintiff's injuries . . . [are] caused by an accident or trauma, plaintiff's action accrues at the time of injury. . . . The cases so far discussed involved statutes which either did not specify the time of accrual or provided that the action accrued at the time of injury. A different result was reached under a Connecticut statute providing that 'No action to recover damages for injury to the person . . . shall be brought but within one year from the date of the act or omission complained of. . . .' [citing *Dincher* v. *Marlin Firearms Co.*, supra]." 3 Frumer & Friedman, Products Liability § 39.01 [2].

that, effective July 1, 1935, the above quoted words were replaced with those of the present statute, 'from the date of the act or omission complained of.' This change is significant and undermines the plaintiff's argument that the period of limitations is still to be measured from 'the date of the injury,' i.e., from the time the cause of action accrues. . . . It may also be noted by way of contrast that in other sections of the Connecticut limitations statute the words, 'after the right of action shall accrue' are used to fix the point of time from which the prescribed period of limitation is measured. . . . Of course, the act or omission complained of took place, at the latest, when the sale of the defective gun was complete . . . to put the gun on the market without using reasonable care to make sure that it would not cause harm to one who used it as it was to be expected that it would be used." It should be pointed out that many of the authorities cited by the plaintiff for the contrary proposition involve statutes which specifically provide that the limitations on commencing actions on torts begin to run "after the cause of action has accrued." See, for example, *Rosenau* v. *City of New Brunswick*, 51 N.J. 130, 143, 238 A.2d 169.

Because of the distinction created in the Connecticut limitation statutes between the injury and the tortious conduct which caused it, it is, indeed, possible, on occasions, to bar an action even before the cause of action accrues. However, this court explicitly accepted that anomalous result in *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 127 A.2d 814, holding that under the statute under discussion, the limitation of an action against the seller of an air rifle in violation of another statute commenced to run when the defendant sold the gun

and not when the plaintiff sustained injury some two-and-one-half years later, expressly stating (p. 173): "Clearly, therefore, the words 'act or omission complained of' in § 8324 [now § 52-584] are intended to mean something different from injury or damage. The date of the act or omission complained of is the date when the negligent conduct of the defendant occurs and is not the date when the plaintiff first sustains damage"; and even more specifically observing (pp. 174-75): "There is no reason, constitutional or otherwise, which prevents the legislature from enacting a statute, such as § 8324, which starts the limitation on actions for negligence running from the date of 'the act or omission complained of,' even though at that date no person has sustained damage and therefore no cause of action has come into existence. Indeed, such a provision accords with the purposes of statutes of limitation. . . . It is consonant with the purpose of protecting defendants against stale claims that the legislature should enact a statute, such as § 8324, which may on occasion bar an action even before the cause of action accrues."

Since the plaintiff did not institute this suit until thirty-three months after the accident, it was then obvious that unless the "act or omission complained of" in his strict liability action occurred at a time close to the date of the accident, the three-year rule of § 52-577 would bar the suit. As a result, the plaintiff alleged in the third count of his complaint: "The peculiar propensity of the 1959 Chevrolet Corvette equipped with posi-traction transmission to swerve and 'fishtail' constituted a defective condition unreasonably dangerous to the user, and in spite of this defective condition, the defendant permitted the vehicle to be available for future use

without indicating by label or otherwise the danger to which the user would expose himself. Further, after changing the type of clutch plate used in the posi-traction unit after 1959, the defendant failed to advise the owners, or to make any adequate attempt to advise the owners by letters, publicity or otherwise, to bring in the vehicle to have the clutch plate changed." This allegation, of course, laid the groundwork for the plaintiff's argument that the "act or omission complained of" was the continuing failure to warn and recall, and that this course of conduct continued until the accident so that § 52-577 should run from that time. The plaintiff's theory derives directly from our decision in *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 130 A.2d 793, which involved the words "act or omission complained of" in § 8324 (now § 52-584) and wherein we stated (p. 321), citing *Vilcinskas:* "When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." The plaintiff in *Handler* had injured himself while firing a defective cartridge in a revolver and, within one year from the date of his injury, sued the cartridge manufacturer in negligence for manufacturing a defective cartridge and for failing to warn of the potential danger of the product. The accident occurred more than a year after the sale of the cartridge, and the plaintiff was, of course, seeking to avoid the one-year bar of § 8324, forerunner of § 52-584, as then worded. The court treated the plaintiff's allegation that the defendant acted negligently in failing to warn of the potential danger of an inherently dangerous product as stating a cause of action in which the act or omission complained of was conduct continuing to the time of injury and therefore not barred by the statute.

*Handler* was a negligence case, however, and we are not convinced that a continuing failure to warn can constitute the "act or omission complained of" in a strict products liability action. The issue here is not whether the "act or omission complained of" in a suit to which § 52-577 applies can ever constitute a course of continuing conduct, but, more specifically, whether the "act or omission complained of" in a strict liability action can be a continuing failure to warn. The crucial difference is not between § 52-577 and § 52-584, but between a cause of action in negligence and one in strict liability. *Handler* (p. 321) spoke of the *"wrong* sued upon" (emphasis added), and the "failure to warn," which the plaintiff alleges, is not the wrong sued upon in a strict liability action.

We agree with the trial court that the essence of the tort of strict liability is the manufacture and sale of a defective product. In *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 227 A.2d 418, we discussed those allegations of a complaint necessary to sustain recovery on the theory of strict liability and adopted the formulation set forth in § 402 A of the Restatement (Second) of Torts, stating (p. 562) with respect to the basic elements of the theory: "These include not only allegations that the defendant sold the product, that it was in a defective condition unreasonably dangerous to the user or consumer or to his property, that it caused physical harm to the consumer or user or to his property . . . and that the seller was engaged in the business of selling such a product but also that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. . . . This latter essential allegation may well be of great

significance in such circumstances as those which gave rise to the instant case where the product passed through several hands and eventually came into the possession of the plaintiff as part of a used, secondhand machine. 'It is common knowledge that materials subject to friction will eventually wear out. . . .' "

One should bear in mind that it was the failure of the complaint to allege that the product "was expected to and did reach the plaintiff without substantial change in the condition in which it was sold" which defeated the plaintiff's cause of action in *Rossignol* (p. 562) and not the Statute of Limitations. What is important, in reconciling any apparent conflict between *Handler* and *Rossignol,* as applied to the facts of the case before us, is to remember that *Handler* was a negligence action which was brought within one year from the date of injury and, accordingly, was not barred for the same reason as was the negligence count for personal injuries in this case; that a failure to warn of the type alleged by the plaintiff in his third count would in no way affect the establishment of strict liability under the essential ·elements spelled out by *Rossignol* since, if the Corvette had not been defective when sold, the failure to warn alone would not have made the defendant strictly liable; and, conversely, that even if this defendant had affirmatively disproved a failure to warn or proved that it had not discovered that a defect existed, it still would have been susceptible to strict liability.[6]

---

[6] An automobile is not the type of unreasonably dangerous product discussed in comment j of § 402 A of the Restatement which is rendered defective immediately upon its sale if the manufacturer fails at that time to warn of its potential harm if improperly used. In this connection, an interesting criticism of *Handler* observes: "The plaintiff in *Handler* did not base his action on failure to warn

Any duty owed by this defendant to warn owners of 1959 Corvettes of a potential danger created by the slip differential was a duty of reasonable care, the breach of which would constitute negligence, and, had the plaintiff brought timely suit in negligence for the continuing failure to warn, that continuous course of conduct would have constituted the "act or omission complained of," and *Handler* would have been applicable. But § 402 A of the Restatement, adopted by us in *Rossignol,* points out, in comment a, that strict liability is not affected by the presence or absence of negligence, stating: "The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product." In other words, any duty to warn here arose only because the Corvette was defective in the first place, and the plaintiff consistently has claimed that it was defective from the time of its first sale. Accordingly, we find no error in the conclusion of the trial court that the "act or omission complained of" in an action based upon the *Rossignol* theory of strict liability is the sale of the defective product, and that an allegation of continuing failure to warn of danger after discovering a defect does not prevent the statutory bar of § 52-577 from commencing to run at the date of sale. As indicated previously, this

by label or otherwise. . . . The gist of plaintiff's action was negligent construction. A *true* duty-to-warn case, it seems to us, is one in which the product is constructed as planned but there is some danger in its use against which a warning is necessary. According to the *Handler* case, in order to get the benefit of the statute, defendant-manufacturer would have had to label his package with a warning that a cartridge was dangerous if defectively made. Doesn't everyone know this? *Every* product may be potentially dangerous if defectively made." 3 Frumer & Friedman, Products Liability § 39.01 [2].

result is mandated by the wording of the statute, and it is clear from amendments to the Statute of Limitations since our decisions in *Vilcinskas* and *Handler* that the legislature fully intended the results created by the "act or omission" language. See 3 Frumer & Friedman, op. cit. § 39.01 [2] n.6; *Dincher* v. *Marlin Firearms Co.*, 198 F.2d 821, 823 (opinion of *Frank, C. J.*, dissenting). We cannot say that it was unreasonable for the legislature to decide that a products manufacturer should not be subject to strict liability after three years even if a defective product were to cause injury at a later date. In assessing the plaintiff's complaint as to the harshness to him of this result, we must bear in mind, once again, that had he brought his action more promptly after the accident, § 52-577 would have posed no bar to his recovery in strict liability, and, furthermore, that a plaintiff whose strict liability cause of action is extinguished by § 52-577 will usually have a cause of action in negligence to pursue, as did this plaintiff had he acted more promptly.

## II

In the second of his two assignments of error, the plaintiff attacks the court's granting of the defendant's motion to set aside the second verdict rendered by the jury for the plaintiff, namely, the award of $18,375 on his claim for indemnification of the sums paid in settlement of the actions brought against him by his injured passengers on the basis, claimed to be erroneous, "that the issue of the defendant's negligence was not submitted to the jury and that this [i.e., products liability] was the only basis on which the plaintiff could prevail on his indemnification count." As mentioned at the outset of this opinion, summary judgment had been rendered in

favor of the defendant with respect to the plaintiff's personal injury claim under the second count in negligence, without appeal by the plaintiff, leaving only the indemnification claim for determination under that count. Since the "injury" claimed thereunder was the money paid out by the plaintiff in settlement of his injured passengers' suits against him, this action by the plaintiff against the defendant was brought within one year of the "injury," as required by the statute. However, § 52-584, as previously discussed at length, also requires, in any event, that suit be brought within three years "of the date of the act or omission complained of." With respect to this second count in negligence, the court ruled that "the acts or omissions complained of in paragraph 6 of the second count of the complaint relate to the time of sale, except for subparagraphs (c) and (e), which may be construed to allege a breach of a continuing duty to warn of a danger or to correct it within the rule of the *Handler* case. As to the allegations of those subparagraphs, the Statute of Limitations would not bar the action."

In disputing this conclusion, the plaintiff argues that the issue of the defendant's negligence had already been submitted to the jury, and that the indemnification verdict should be sustained on that ground. On the contrary, we think it is clear from the record that the negligence count of the complaint was never submitted to the jury, and that the only count submitted was the strict liability count. The trial court at no time instructed the jury that it need find the defendant negligent to return a verdict for the plaintiff. The jury were instructed to apply negligence principles only in their determination of whether the plaintiff himself was at fault, within the meaning of the rule that "there is no right

of indemnity or contribution between joint tortfeasors." *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732. Any error the plaintiff might have claimed that the trial court committed in its charge on the indemnification claim was cured by the verdict, and we cannot find that the charge in this case converted a strict liability cause of action into one sounding in negligence.

The defendant, on the other hand, also has assigned as error the trial court's order that there be a trial on the indemnification claim in the second count, arguing that the plaintiff abandoned that count either when he submitted, without reservation, for submission to the jury, a substituted pleading which did not contain the negligence allegations or else when he neglected to take exception to the trial court's failure to charge on the negligence count. Although the defendant did not file a cross appeal in this case, it urges us to consider its assignment of error, pointing to cases where this court has considered issues raised by an appellee's assignment of error in the absence of a cross appeal where there is no prejudice to the appellant, where the claimed error was in a conclusion of law rather than in a finding of fact, where the subordinate facts on which the conclusion was made were in the finding, and where the issue was fully briefed, citing *DiSesa* v. *Hickey,* 160 Conn. 250, 262, 263, 278 A.2d 785. Even assuming that satisfaction of those criteria would justify our consideration of the defendant's assignment of error, we do not find that those conditions are met here. The plaintiff raised the issue of the trial court's order that there be a limited trial for indemnification on the ground that the negligence count had been submitted to the jury and, in his brief, did not address at all the entirely different

question of whether the second count had been abandoned.  Furthermore, we do not feel that it is clear from the record before us just why the trial court did not submit the second count to the jury.  The defendant will have opportunity to raise the issue of abandonment at the time of the trial on this count.

We affirm the order of the trial court that there be a trial on the indemnification claim of the second count of the complaint sounding in negligence, limited to those paragraphs of the complaint alleging a breach of a continuing duty to warn within the rule of the *Handler* case.

There is no error.

In this opinion the other judges concurred.