[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS TO CONFIRM AND TO VACATE ARBITRATION AWARD
The plaintiff moves to confirm an arbitration award. The defendant moves to vacate that award as time barred under the insurance contract between the parties.
Facts
The parties have entered into the following CT Page 7657 "Stipulation."
"The parties make the following stipulations and agreements relating to the plaintiff's Motion to Confirm Arbitration Award and Defendant's Motion to Vacate Arbitration Award.
1. The full record from the arbitration award may be admitted as a full Exhibit relating to the disposition of these motions. It includes:
 a. Exhibit A to the plaintiff's Motion to Confirm Arbitration Award, Pages 1 through 141B, related errata sheet with exhibits (Exhibit B to Motion to Confirm) and deposition of Dr. Ian Fischbein (Exhibit C to Motion to Confirm).
2. The plaintiff was covered by the policy of insurance issued by the defendant, set out on pages 058 through 089 (except pages 63-66) of Exhibit A to the Motion to Confirm.
3. There is $300,000 of stacked coverage available to the plaintiff under the policy of insurance referred to in Number 2 above.
4. The accident that occurred on January 24, 1987 involving automobiles driven by Donna McGlinchey and David Cooper was caused by the negligence of David Cooper.
5. David Cooper (the tortfeasor) had $20,000 of automobile liability insurance coverage available at the time of the accident.
6. The plaintiff brought a lawsuit against David Cooper by serving a complaint on him on October 8, 1988 and filing that complaint with the Superior Court in New Haven on October 12, 1988.
7. The plaintiff exhausted the limits of the underlying liability insurance coverage of David Cooper on August 4, 1989 when Roger Brewer, Esq. mailed a draft in the amount of $20,000 to the plaintiff's attorney in full settlement of the dispute between McGlinchey and Cooper.
8. The plaintiff first learned that David Cooper was an underinsured motorist on March 1, 1989 when Mr. Cooper's attorney, Roger Brewer, Esq., in response to formal discovery, CT Page 7658 disclosed that the limits of Mr. Cooper's insurance was $20,000.
9. The plaintiff demanded arbitration pursuant to the uninsured/underinsured provisions of her liability insurance policy with the defendant on March 9, 1989."
In addition the court finds the following facts:
On January 29, 1991 a panel of three arbitrators in a two to one decision awarded the plaintiff $220,000 in damages for injuries she sustained in an automobile accident with the tortfeasor on January 14, 1987. The panel held that the defendant was entitled to an offset of $20,000 paid by the tortfeasor's insurance company.
The majority portion of the award is as follows:
"ARBITRATION AWARD
In this matter, the undersigned arbitrators find that the provisions of the Respondent's policy do not require that a claim for underinsured motorist benefits must be made within two years of an accident causing injuries. We find that the Aetna's policy contains permissive, rather than mandatory language, when it refers to a two-year period during which ". . . the covered person may make a written demand for arbitration." That language, coupled with the subsequent policy language under "General Provisions" (Part F), which states, in part, "In addition, under Part C, no legal action may be brought after two years from the date of accident," gives rise to an ambiguity which must be resolved against the Respondent.
We further find that the Claimant has sustained fair, just and reasonable damages of $220,000 and that the Respondent is entitled to an offset of $20,000 for the underlying liability payments. The Respondent is, therefore, ordered to pay the Claimant the sum of $200,000.
This award does not address the question of no-fault payments or setoffs, or reimbursements made or claim."
The insurance policy issued by defendant includes coverage for uninsured or underinsured motorist (UM). Such coverage is set out in Part C of the policy. Subpart 5 of that part provides for arbitration. That subpart 5 is, in pertinent part, as follows:
"If we and a covered person do not agree: CT Page 7659
 1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or
2. On the amount of damages;
 the covered person may make a written demand for arbitration within 2 years of the date of the accident as follows:
. . .
 B. If the amount in demand is more than $40,000.00, the covered person and the Company will each select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree within 30 days, either the covered person or the Company may request that selection be made by a judge of a court having jurisdiction. Each party will:
 1. Pay the expenses of the third arbitrator equally . . .
The decision made by the arbitrator(s) will be binding. However, either party may make a written demand for a trial it the amount of damages awarded is greater than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If this demand is not made within 60 days of the decision of the arbitrator(s), the amount of damages awarded by the arbitrator(s) will be binding."
The policy also has a Part F which is, in pertinent part, as follows:
PART F. GENERAL PROVISIONS
. . .
LEGAL ACTION AGAINST US
 No legal action may be brought against us until there has been full compliance with all the terms of this policy.
. . . CT Page 7660
 In addition, under Part C, no legal action may be brought after two years from the date of accident.
The court cannot find any facts from which it might conclude that plaintiff could not have determined the amount of tortfeasor's UM coverage long before March 1, 1989.
Law
The question is,
Does the policy require that a covered person must make a claim for arbitration of a UM dispute within two years of the date of the accident in which she received her injuries?
The accident happened January 24, 1987 and the claim for arbitration was made March 9, 1989, about two years plus one and one-half months after the accident.
I. Part C
The policy provides that defendant "may make a written demand for arbitration within 2 years of the date of the accident." What that clause allows her to do is, (1) to make a demand, (2) make it in writing, and (3) make it within 2 years. As the court reads this, she does not get arbitration if her demand is not in writing; and she does not get arbitration if her written demand is not made within the 2 years.
That portion of Part C, subpart 5, lists no penalty, or qualifier of any kind, in the event she fails to do one of those three things. In contrast, the language in the paragraph below, C 5 B 2, provides that "either party may make a written demand for a trial if the amount of the damages is greater than [a certain limit]. If this demand is not made within 60 days of the decision of the arbitrator(s), the amount of damages awarded by the arbitrator(s) will be binding." In that permissive instance something happens when the right to make a written demand is not exercised. In the prior permissive situation upon her failure to exercise her right to make a demand the policy itself does not specifically provide that "something happens"; i.e., her right to make a demand terminates if not made in writing within the two-year period.
II. Part F
Part F refers us back to Part C when it says, "In addition, under Part C, no legal action may be brought after two years from the date of accident." This clause is not CT Page 7661 contrary to public policy. Prokolkin v. General Motors Corporation, 170 Conn. 289, 294-297. This is so even when as a result of the insurance policy limitation "it is, indeed, possible, on occasion, to bar an action before an action accrues." Id. 296. Also see Protter v. Brown Thompson Co.,25 Conn. App. 360.
The clause does not produce ambiguity because when Part F refers back to Part C; i.e., "However, either party may make a written demand for trial if the amount of damages awarded [by the arbitrator] is greater than . . . [etc.]." That Part C provision is the "legal action" to which Part F refers and that legal action cannot possibly be started until after the arbitration is complete. Part F's reference is not to the "demand for arbitration."
Plaintiff argues that "the language of the . . . policy prohibits a finding that the limitation period expired before the plaintiff learned that the tortfeasor was an underinsured motorist." It does not.
III. Exhaustion of Tortfeasor's Coverage
Must claimant exhaust the tortfeasor's insurance by way of judgment or settlement before she may make a written demand for arbitration?"
When we compare Part F and Part C there is revealed a sharp contrast. Part F deals with legal actions. In order to commence legal action she has to be in "full compliance with all of the terms of [the] policy." As Part C 1 provides, the insurance company will pay under the UM coverage "only after the limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgments or settlements." Until such exhaustion occurs a legal action may not be brought.
However, arbitration is not a legal action. The strong restraint in Part F in regard to legal actions is not found in Part C in regard to arbitration.
When we accept the idea that the insured must exhaust the tortfeasor's insurance under the policy we come up against the requirement that such exhaustion must be by "payment." That may not occur for years under a structured settlement or even under a judgment. Surely the policy does not require the insured to wait for full payment after a written settlement agreement or after a final non-appealable judgment to seek arbitration. CT Page 7662
Motion to confirm is denied. Motion to vacate is granted.
N. O'NEILL, J.