[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 6, 1996
FACTS
The plaintiffs, Evans Cooling Associates (ECA), National Technologies, Inc. (NTI) and Meca Development, Inc. (MECA), commenced the present action against the defendants, Reid 
Riege, P.C. and Attorney Robert Mule, by service of a writ of summons and complaint on September 18, 1995. The plaintiffs filed a conformed amended complaint on December 12, 1995. The plaintiffs' conformed amended complaint sets forth nine counts against the defendants. The defendants filed an answer and special defenses on March 25, 1996.
On June 10, 1996, the defendants moved for summary judgment as to all nine counts of the complaint arguing that the claims are barred by the applicable statute of limitations for negligence actions, General Statutes § 52-577. This defense was properly set forth in the answer of the defendants, specifically the third special defense which states "[p]laintiffs' claims are barred by the applicable statute of limitations, Conn. Gen. Stat. § 52-577." CT Page 5531
The pertinent allegations of the complaint are as follows: The defendant Reid Riege represented the plaintiffs ECA, NTI, and MECCA in 1983 and 1984. (Conformed Amended Complaint ¶ 8-10.) Plaintiffs ECA and NTI were billed for Reid Riege's services and rendered payment to the defendant Reid Riege. (Id. ¶¶ 13 and 14.) On or about July 31, 1990, defendant Reid Riege, "acting by and through defendant Attorney Mule," undertook the representation of Connecticut National Bank with regard to a foreclosure on a loan to plaintiff MECA which was guaranteed by Mr. Evans an "owner, and/or principal, and/or officer, and/or general partner" of the plaintiffs. (Id. ¶ 22.) Said representation by defendant Reid Riege continued "for several months" after July 31, 1990. (Id.)
During the course of representing Connecticut National Bank the defendant Reid Riege, "acting by and through defendant Attorney Mule," allegedly (1) "availed itself of information from the files of the plaintiffs MECA, ECA, and NTI which it had in its possession and control as a result of the defendant law firm's earlier representation of the plaintiffs; . . . [2] attempted to gain a security interest in the same . . . technologies owned by the plaintiffs that it had originally represented the plaintiffs MECA, ECA and NTI in connection with; . . . [3] advised and or encouraged, and/or influenced [the bank] to refrain from the proposed forbearance agreement regarding the debt due from MECA to [Connecticut National Bank]." (Id. ¶ 23-25.)
The conformed amended complaint[1] further alleges that "[a]s a direct cause . . . of the defendants breaches of contract . . ., the plaintiffs were unable to obtain any venture capital financing and the plaintiffs were damaged thereby." (Id.
¶ 27.) The twenty-eighth paragraph of each and every count sets forth various ways the plaintiffs were harmed as a result of the defendants alleged breach of contract and further states that their losses were all reasonably foreseeable as a consequence of the defendants' "breaches of contract."
Paragraph twenty-six of the first count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege was under a continuing duty, as a law firm, to avoid a conflict of interest as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time and when Reid Riege undertook the CT Page 5532 representation of [CNB] on, or about, July 31, 1990 and several months thereafter against MECA, it was a direct conflict of interest and a breach of the contract it had with the plaintiffs and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count One ¶ 26.)
Paragraph twenty-six of the second count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege, as a law firm, was under a fiduciary duty as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, and said duty continues to the present time, and when Reid Riege undertook the representation of [CNB] on July 31, 1990, or thereabouts, and several months thereafter, against plaintiff MECA and its president, John W. Evans who was also vice president of plaintiff NTI and a general partner of ECA, it was a breach of the fiduciary duty, and a breach of the contract it had with the plaintiffs and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Two ¶ 26.)
Paragraph twenty-six of the third count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege, as a law firm, was under a continuing duty, to avoid a conflict of interest as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time and when Reid Riege availed itself of information from the files of the plaintiffs, which it had in its possession and control since 1984, on behalf of [CNB], it was a direct conflict of interest and a breach of the contract it had with the plaintiffs and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Three ¶ 26.)
Paragraph twenty-six of the fourth count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege, as a law firm, was under a continuing duty of confidentiality as to the plaintiffs' affairs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time, and when Reid Riege availed itself of information from the files of the plaintiffs, which it had in it possession and control since 1984 as a result of its earlier representation of the plaintiffs, it was a breach of confidentiality, and a breach of the contract it had with the plaintiffs and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Four ¶ 26.) CT Page 5533
Paragraph twenty-six of the fifth count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege, was under a continuing fiduciary duty as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time, and when Reid Riege availed itself of information from the files of the plaintiffs, which it had in it possession and control since 1984 as a result of its earlier representation of the plaintiffs, it was a breach of its fiduciary duty to the plaintiffs and a breach of the contract it had with the plaintiffs, and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Five ¶ 26.)
Paragraph twenty-six of the sixth count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege was under a continuing duty, to avoid a conflict of interest as to the plaintiffs and the matters with which Reid 
Riege had represented the plaintiffs, which duty continues to the present time and when Reid Riege in the course of its representation of [CNB] against MECA, attempted to gain a patent assignment and/or security interest in the same . . . technologies owned by the plaintiffs that Reid and Riege had originally represented the plaintiffs in connection with, it was a direct conflict of interest, and a breach of the contract it had with the plaintiffs and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Six ¶ 26.)
Paragraph twenty-six of the seventh count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege was under a continuing duty as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time, and when Reid Riege in the course of its representation of [CNB], attempted to gain a patent assignment and a security interest in the same . . . technologies owned by the plaintiffs that Reid and Riege had originally represented the plaintiffs in connection with, it was a breach of the fiduciary duty owed to the plaintiffs and a breach of the contract it had with the plaintiffs, and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Seven ¶ 26.)
Paragraph twenty-six of the eighth count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege was under a continuing duty to avoid a conflict of interest as to the plaintiffs and the matters with which Reid 
CT Page 5534 Riege had represented the plaintiffs, which duty continues to the present time, and when Reid Riege advised, and/or encouraged, and/or influenced [CNB] to refrain from the proposed forbearance agreement regarding the debt from MECA to [CNB], it was a direct conflict of interest and a breach of the contract it had with the plaintiffs, and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Eight ¶ 26.)
Paragraph twenty-six of the ninth count states: "Subsequent to Reid Riege's representation of the plaintiffs in 1984, Reid Riege was under a continuing duty as to the plaintiffs and the matters with which Reid Riege had represented the plaintiffs, which duty continues to the present time, and when Reid Riege advised, and/or encouraged, and/or influenced [CNB] to refrain from the proposed forbearance agreement regarding the debt due from MECA to [CNB], the fiduciary duty was breached, and it was a breach of the contract it had with the plaintiffs, and plaintiffs were damaged thereby." (Conformed Amended Complaint, Count Nine, ¶ 26.)
Pursuant to Practice Book § 378 et seq., the defendants filed a motion for summary judgment on the ground that there is no genuine issue of material fact as to whether the plaintiffs' claims are time barred by General Statutes § 52-577. The defendants attached a memorandum of law in support of their motion. The plaintiffs filed a memorandum in opposition to the motion for summary judgment and attached affidavits and deposition transcripts to the opposition. The defendants filed a reply memorandum of law.
The defendants argue that all nine counts of plaintiffs' complaint sounds in negligence or legal malpractice, and are barred by General Statutes § 52-577. Specifically, the defendants argue that the complaint sets forth three counts of breach of fiduciary duty, three counts of breach of confidentiality and three counts of conflict of interest, all of which are nothing more than tort claims. Further, the defendants argue that the plaintiffs' claims are nothing more than tort claims couched in breach of contract language. The plaintiffs concede that all the actions alleged in the complaint would be barred if the negligence statute of limitations were applied but argue that each count sets forth a cause of action for breach of contract and therefore the torts statute of limitations is not applicable thus the complaint is not time barred. CT Page 5535
DISCUSSION
"[S]ummary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507
(1994), quoting Practice Book § 384. The moving party has the burden of showing the absence of any genuine issue as to all material facts. Fogarty v. Rashaw, 193 Conn. 442, 445,476 A.2d 582 (1984).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The test is whether a party would be entitled to a directed verdict on the same facts . . ." (Citations omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., supra, 229 Conn. 105-06. "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 380, 260 A.2d 596
(1969).
A motion for summary judgment is the appropriate vehicle to determine whether a claim is barred by the statute of limitations. Catz v. Rubenstein, 201 Conn. 39, 513 A.2d 98
(1986). "Where there is no dispute as to the applicable statute of limitations, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." Shuster v. Buckley, 5 Conn. App. 473, 477,500 A.2d 240 (1985).
General Statutes § 52-577 provides that, "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." It is clear that in deciding when a legal malpractice action accrues, the operative date is the date of the act or omission complained of, not the date of any consequence to which that act or omission may have led. Shuster v. Buckley, 5 Conn. App. 473, 477-79,500 A.2d 240 (1985). It is noted at the outset that "[s]ection 52-577
is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the CT Page 5536 moment the act or omission complained of occurs. Our Supreme Court stated in Fichera v. Mine Hill Corporation, 207 Conn. 204,212, 541 A.2d 472 (1988): In construing our general tort statute of limitations, General Statutes § 52-577, which allows for an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred . . ." (Citations omitted; internal quotation marks omitted.) S.M.S.Textile Mills, Inc. v. Brown, Jacobsen, Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 790-91, 631 A.2d 340, cert. denied,228 Conn. 903, 634 A.2d 296 (1993).
Unlike the statutes of other jurisdictions "which begin to run only after the cause of action has accrued," the Connecticut statutes of limitations for torts commence with the act or omission complained of, which is when the tortious conduct of the defendant occurs and not the date when the plaintiff first sustains damage or first discovers an injury. McDonald v. HaynesMedical Laboratory, 192 Conn. 327, 330, 471 A.2d 646 (1984);Prokolkin v. General Motors Corporation, 170 Conn. 289, 294-302,365 A.2d 1180 (1976); Vilcinskas v. Sears, Roebuck Co.,144 Conn. 170, 173, 127 A.2d 814 (1956). As a result of this rule, in some instances, the plaintiff may not sustain damage until after the statute of limitations has run. Fichera v. Mine HillCorporation, supra, 207 Conn. 213; Ecker v. West Hartford,205 Conn. 219, 241, 530 A.2d 1056 (1987).
Although the unavoidable result of construing General Statutes § 52-577 may be harsh because "the plaintiff[s] may very well be foreclosed from any remedy for what might have been an actionable injury . . . [it] is within the General Assembly's constitutional authority to decide when claims for injury are to be brought." Burns v. Hartford Hospital, 192 Conn. 451, 460,472 A.2d 1257 (1984). "The plaintiff[s] [have] not been deprived of an opportunity to bring an action. The opportunity was there, but was limited by time." Vessichio v. Hollenbeck, 18 Conn. App. 515,520, 558 A.2d 686 (1989).
The defendants argue that Shuster v. Buckley, supra,5 Conn. App. 473, is controlling in the present case and that the second count is essentially one alleging malpractice and is governed by the three year statute of limitations. In Shuster v.Buckley, supra, 5 Conn. App. 476, the court stated that "[w]here CT Page 5537 the complaint alleges legal malpractice based on negligence, the tort statute of limitations applies . . . Where the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sound in negligence, even though he alleges that he retained him or engaged his services . . ." In Shuster, however, the complaint was in a single count clearly sounding in legal malpractice and nothing more. In the present case, the complaint contains language, which read in a light most favorable to the plaintiffs, sets forth allegations of breach of contract.
The defendants argue that because the language of negligence is used in all counts of the complaint, it is nothing more than a legal malpractice claim. They further argue that the additional language of breach of contract is simply an attempt to avoid the three year tort statute of limitations. The court finds, however, that a fair and reasonable construction of the language of the complaint indicates that it states a claim for breach of contract.
Additionally, the defendants argue in accordance with a line of Superior Court decisions regarding the relationship between a medical malpractice claim and a breach of contract claim. "There are a number of rulings by the Superior Court in the area of medical malpractice wherein counts in a complaint which claim breach of contract have been stricken as impermissible attempts to circumvent the three-year statute of limitations." Arnold v.Weinstein, Schwartz Pinkus, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 0533312 (February 13, 1996) (Aurigemma, J., 16 CONN. L. RPTR. 196).
 There appears to be two lines of Superior Court decisions regarding the relationship between a medical malpractice claim and a breach of contract claim. "To be separate from a malpractice claim, the plaintiff must allege that the defendant doctor assured or warranted a specific result, as opposed to a situation where the doctor makes a generalized statement that the result will be good . . ." (Citations omitted.) White v. Bridgeport Radiology Assoc., P.C., supra, 10 CONN. L. RPTR. No. 7 at 223. "The action in contract is based upon a failure to perform a special agreement." Malone v. Caldwell, 6 CONN. L. RPTR. 323, 324 (1992) (Wagner, J.), quoting Camposano v. Claiborn, 2 Conn. Cir. Ct. 135, 137, CT Page 5538 196 A.2d 129 (1963). See also Lowery v. Metpath,
Superior Court, judicial district of Hartford/New Britain at Hartford, DN 518788 (November 9, 1993) (Hennessey, J.).
 However, the other line of cases do not require a special agreement. A breach of contract case is "entirely separate from malpractice, even though they both, as here, may arise out of the same transaction . . . The two courses of action are dissimilar as to theory, proof and damages recoverable." Camposano v. Claiborn, supra, 2 Conn. Cir. Ct. 137. "[T]he second count of the complaint [for breach of contract] should not be stricken. Two distinct causes of action may arise from one wrong. Hickey v. Slattery, 103 Conn. 716, 719 (1926)." Paggioli v. Manchester Memorial Hospital, 1 CONN. L. RPTR. 729, 729 (1990) (Allen, S.J.). See also Johnson v. Kaiser Foundation Health Plan, Superior Court, JD of New Haven at New Haven, DN 031241-S (May 18, 1994) (Gray, J.).
Arnold v. Weinstein, Schwartz Pinkus, supra, quoting Picarazziv. Fichera, Superior Court, judicial district of Fairfield-Bridgeport at Bridgeport, Docket No. 306212 (Dec. 12, 1994) (Maiocco, J., 13 CONN. L. RPTR. 96).
The plaintiffs argue that the line of cases requiring a special agreement are not controlling and instead rely on Mac'sCar City, Inc. v. DeNigris, 18 Conn. App. 525, 530, 559 A.2d 712, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989), wherein the Appellate Court ruled that the longer contract statute of limitations would apply to an action against an attorney as long as the plaintiff took heed to assure that his complaint is "couched in the language of contract." Mac's Car City v.DeNigris, supra, 18 Conn. App. 559. The Appellate Court distinguished the decision in Shuster, supra, by explaining that the complaint in Shuster was "couched in the language of tort rather than contract."
In Westport Bank and Trust Co. v. Corcoran, Mallin Aresco,221 Conn. 490, 605 A.2d 862 (1992), the plaintiff alleged both negligence and breach of contract against its attorneys for failure of the attorneys to discover a problem with title to a piece of property. The Court indicated that it understood "the CT Page 5539 first-count of the amended complaint alleged that `[a]s a result of the foregoing breach of Attorney Mallen's and CMA's contractual duties to [the] Plaintiff, directly . . . the Plaintiff has sustained monetary damages,' and the third count of the amended complaint alleged that `[t]he defendants breached their duty of care to the plaintiff by their negligent and careless' conduct regarding the UBTC mortgage. These allegations . . . clearly alleged, in count one, a breach of direct attorney-client contract and in count three, the tort of legal malpractice by an attorney with respect to his client."Westport Bank and Trust Co. v. Corcoran, Mallin Aresco, supra,221 Conn. 494, n. 5.
"The inference in that case and the other cases cited above, is the necessary conclusion that there is an implicit promise in an attorney-client contract that the attorney will perform his services in ascertaining and advising on the state of title in a competent and professional manner and a breach of that promise supports a valid breach of contract claim, even though the negligent performance of professional service may also give rise to a tort action. A breach of that promise constitutes a contract claim governed by Connecticut's six-year statute of limitations."Heritage Square Associates v. Blum, Superior Court, judicial district of Stamford-Norwalk at Norwalk, Docket No. 117855 (July 21, 1992) (Nigro, J., 7 CONN. L. RPTR. 103, 7 CSCR 992).
It is up to the trier of fact to decide whether or not there was a contract between the plaintiffs and defendants and the nature of that contract. The plaintiffs allege that the parties had an agreement and that the agreement was breached in a variety of ways as more fully set forth in the above recitation of the facts. The defendants have presented affidavits attesting to the existence of a contract. In their answer, the defendants admit that Reid and Riege represented NTI and ECA but deny the allegation that there was agreement between the parties as alleged in paragraph nine of all nine counts. The plaintiffs' arguments and assertions indicate that any contract, if indeed one existed, was in all likelihood an oral contract but this question remains for the trier of fact to determine. "The function of the trial court, in summary judgment proceedings, is not to decide issues of material fact, but rather to determine whether any such issues exist. The resolution of genuinely disputed issues must be left to later determination after a full hearing." Telesco v. Telesco, 187 Conn. 715, 718, 447 A.2d 752
(1982). CT Page 5540
Although the complaint mixes language such as duty and breach with language of breach of contract, it nevertheless sets forth a claim for breach of contract. As a result, the tort statute of limitations is not applicable to the causes of action alleged, all of which sound in breach of contract. Whether or not a contract existed, and the nature of the contract between the parties clearly presents questions of fact. For the foregoing reasons, the motion for summary judgment is denied.
DRANGINIS, J.