[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS ARTHUR AND CONCETTA LEWIS' SUMMARY JUDGMENT MOTION
This case arises out of a tragic fire that occurred December 30, 1998, in which three people died. The estates of the victim have brought separate actions against, among others, Arthur and Concetta Lewis, d/b/a as "Lew the Plumber." These defendants have now filed motions for summary judgment in each of the three actions.
State police investigation determined the likely cause of the fire was an oil-fired water heater in the basement. As noted by counsel in the opposition brief for the Estate of Anna Hull, an investigator for the police concluded that the heater was improperly vented through a chimney flue that was too small. Relying on attached exhibits, the Hull brief goes on to say that not only was the flue too small but "more importantly, the same flue was also venting the wood stove in the home. These code violations caused the fire." The plaintiffs claim that the heater was installed by the defendants and that for the reasons just mentioned it was negligently installed. The defendant, Arthur Lewis, has submitted an affidavit in which he denies installing the heater but the parties appear to agree that the heater was installed no later than 1994. The defendants advance two separate grounds for their summary judgment motion: (1) the defendants cannot be held responsible for the heater because they had no involvement with it and did not install it; (2) even if it were to be concluded that they did install it, the plaintiffs' claims are barred by § 52-584 since they were not brought within three years from the date of the act or omission that is complained of and by § 52-555 ("Actions for injuries resulting in death") since the claim was not brought within five years of the act or omission complained of by the plaintiffs. It is undisputed that suit in all three cases was brought in December, 2000, more than five years from the installation of the water heater.
The standards to be applied in deciding a motion for summary judgment are clear. A court reviewing such a motion cannot decide a material issue of fact raised by the motion and the opposition to it. A party is entitled to have its matter tried by a jury under the constitution. On the other hand, if no such issue presents itself, a court has an obligation to grant such a motion if the moving party is entitled to such CT Page 8452 a result since litigants should not have to needlessly undergo the expense and anxiety of litigation found to be without merit.
 (1)
The court cannot decide this motion for the defendants on their claim that Mr. Lewis did not install the heater. A material issue of fact is raised by the affidavit of James Hull, in which he states that sometime in 1994, he met Mr. Lewis who was performing work at the residence in question and "spent most of the day installing an Aro oil-fired hot water heater." Affidavits and documentation to the contrary filed by the defendants cannot remove the issue of fact raised by the affidavit of James Hull.
 (2)
The plaintiffs in all of the three cases that are subject to this motion rely on the "continuous course of conduct" rule to argue that, because of that concept, the five-year limitation period runs from the "date of injury" — i.e., the date of the fire, December 30, 1998. Because suit was brought in December, 2000, there would be no limitations problem if that doctrine applied. The defendants argue that the doctrine only has been held to extend the limitations period in malpractice and products liability actions.
The law in this area, at least to the court, is somewhat confusing. Key cases are Handler v. Remington Arms Co., 144 Conn. 316, 321 (1957);Prokolkin v. v. General Motors Corp., 170 Conn. 289 (1976); and Gigliov. Conn. Light Power Co., 180 Conn. 230 (1986). Especially important isFichera v. Mine Hill Corporation, 207 Conn. 204 (1988), which commented on the state of the law created by these cases.
The court will try to review these cases. In Handler, a youngster was shooting a pistol at a firing range using cartridges manufactured by the defendant. A cartridge was defective and as the gun was fired the cartridge exploded and a particle from it passed through the youth's eye, id. p. 318. The defendant raised a statute of limitations defense. The plaintiff had one year to bring suit and the action was commenced on December 18, 1951, although the cartridge was purchased prior to December 19, 1950. Through its jury charge, the trial court in effect told the jury that if they found the cartridge was sold more than one year prior to December 18, 1951, the plaintiff could not prevail.
The Supreme Court found error and said at p. 321:
"The sale of the ammunition was not the only act or omission CT Page 8453 complained of. The plaintiffs alleged in their complaint and the amendment to it, and, as shown by the finding, offered evidence to prove, and claimed to have proved, that the defendant, although knowing that the cartridge, if defective, would be an inherently dangerous article and a source of unreasonable risk of injury to those who might use it, permitted it to be available for future use without indicating by label or otherwise the danger to which the user would expose himself. This was not a claim of an act or omission completed at the time the ammunition was sold to Pitcher. Instead it was a claim of conduct continuing to the time of injury. When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 174. . . ."
For the following discussion, it is important to note that Handler was not a strict products liability case. Prokolkin was decided before the limitations provisions for products liability actions were amended and commenting on Handler the court in Prokolkin (a strict liability case) said:
 "Handler was a negligence case, however, and we are not convinced that a continuing failure to warn can constitute the "act or omission complained of" in a strict products liability action. The issue here is not whether the `act or omission complained of' in a suit to which 52-577 applies can ever constitute a course of continuing conduct, but, more specifically, whether the `act or omission complained of' in a strict liability action can be a continuing failure to warn. The crucial difference is not between 52-577 and 52-584, but between a cause of action in negligence and one in strict liability. Handler (p. 321) spoke of the `wrong sued upon' (emphasis added), and the `failure to warn,' which the plaintiff alleges, is not the wrong sued upon in a strict liability action." 170 Conn. at p. 299.
 Fichera is the controlling case and, in Fichera, the court said the following:
"Where we have upheld a finding that a duty continued to exist after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. See Giglio v. Connecticut Light CT Page 8454 Power Co., supra, 242 (`repeated instructions and advice given to the plaintiff by the defendant' concerning a furnace it had previously converted and left in a defective condition); Giambozi v. Peters, 127 Conn. 380, 385 . . . (1940) (`[when . . . injurious consequences arise from a course of treatment [by a physician], the statute does not begin to run until the treatment is terminated'); cf. Handler v. Remington Arms Co., supra (duty to warn of danger of defective cartridge, `an inherently dangerous article,' held to continue in existence until time of injury)." 207 Conn. at p. 210.
In other words, Fichera seems to set up the following universe for the operation of the continuing duty doctrine (1) where the alleged wrongdoer by ongoing contact maintains a continuing relationship with a customer concerning a certain product or job (Giglio) (2) where there is a professional relationship which by its nature requires that there is a continuing duty; and (3) the Handler situation where an inherently dangerous product will in the future create danger for a user and the law therefore creates a continuing duty operative to the time of injury so such activity can be controlled more effectively by the operation of tort liability.
We do not have the situation presented in Giglio where repeated instructions and advice and contact was maintained between the defendant installer of the furnace and the customer. Obviously, in such a case reliance factors enter into the picture and duties are assumed by the installer of the equipment which post date the initial installation of the equipment.
Neither is a malpractice scenario presented where the controlling consideration is that parties have entered into a relationship where a course of treatment is expected and thus the temporal scope of liability is determined by the duration of the treatment.[1] Even if it is accepted as true, which the court does for the purposes of this motion, that Mr. Lewis installed the heater there is nothing about the type of relationship thereby created than that Lewis was paid to install the heater, but not assume a long-lasting relationship regarding its operation.
But the court does feel reluctant to grant the summary judgment motion based on Handler and the continued viability of that case as indicated inFichera. Thus, in paragraph 4(b), it is alleged that Lewis was negligent in that he
"failed to install the oil-fired hot water heater with an adequate vent and improperly vented it in the same flue withCT Page 8455 a wood stove" (emphasis added by this court.
A report by a Mr. Haynes, who was contacted by the state police to examine the fire scene concluded in part that "the installation of the oil-fired domestic hot water heater and the wood stove in the same undersized chimney flue passage contributed to the cause of the fire" (p. 8 of report). The state police investigative report concluded that the fire originated at the heater "and more probable than not was caused by a restriction of the chimney flue draft due to creosote buildup from the wood stove."
A statement by James Hull to the police said the wood stove was installed about 19 years ago (police report dated January, 1998). Mr. Hull went on to say that "the flue pipe had been replaced in 1993 to the wood stove." The oil-fired water heater was connected into the same flue pipe as the wood stove.
True, the oil-fired water heater in and of itself may not be an "inherently dangerous article" like the ammunition cartridge in Handler. But this case is not like Cacace v. Morcaldi, 37 Conn. Sup. 735 (1981) (negligent installation of chimney alleged), Handler not mentioned and court held continuing duty doctrine could not be used to extend limitations period — "no custom or practice which would call for inspections of completed work," id. p. 739; also see Kelemen v. RimrockCorp., 207 Conn. 599, 608-609 (1988).
Even Mr. Lewis recognized that venting a heater and wood stove into the same flue would present a problem. As noted, James Hull said Lewis installed the oil-fired water heater which necessarily would require that it be vented into a flue and the wood stove would have vented into the same flue because it was installed over a decade before. That being the case, given the previously referred to police reports and report from Mr. Haynes, the court must conclude that if Lewis installed the heater — hotly contested but in issue because of the Hull affidavit — then its attachment to the flue made it inherently dangerous at the time of installation.
It does not make much sense, at least to the court, to say we will impose liability on you up to the time of injury for limitations purposes if you sell something that is inherently dangerous, but not to worry, we will not apply continuing duty considerations where what you have sold, although not itself dangerous if properly installed, becomes inherently dangerous by the very way you installed it. CT Page 8456
The motions for summary judgment are denied.
 ___________________ Corradino, J.